690 P.2d 324

Tom D. RUNCORN and Linda Runcorn, husband and wife, Plaintiff-respondents, cross-appellants,

v.

SHEARER LUMBER PRODUCTS, INC., a corporation, Defendant-appellant, cross-respondent.

No. 14758.

Supreme Court of Idaho.

Sept. 14, 1984.

Rehearing Denied Nov. 19, 1984.

R.B. Kading, Jr., and James J. Davis, of Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, Idaho, for defendant-appellant, cross-respondent.

John C. Hepworth, and John T. Lezamiz, of Hepworth, Nungester & Felton, Twin Falls, Idaho, for plaintiff-respondents, cross-appellants.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen., Boise, and Charles R. Bush, Asst. Atty. Gen., State of Wash., Seattle, Wash., for amicus curiae.

BAKES, Justice.

This case arises out of an injury to plaintiff Tom Runcorn, a boiler repairman, whose Washington employer, Atlas Boiler & Equipment Company, contracted to repair a boiler on the premises of Shearer Lumber Products, Inc., in Elk City, Idaho. Runcorn was injured while performing repairs on one of defendant Shearer's boilers. The issues presented are: (1) whether Shearer is a statutory employer under Idaho's workmen's compensation laws, and whether all statutory employers in Idaho are immune from tort recovery by the exclusive remedies provided in the workmen's compensation statute; (2) whether Runcorn's wife should have her damages for loss of consortium reduced by the percentage of negligence attributable to her husband; (3)whether the damages awarded to Runcorn should be reduced by the workmen's compensation benefits received from the insurer of Runcorn's direct employer, Atlas; (4) whether substantial evidence was presented to sustain a jury verdict that Runcorn was comparatively negligent; and (5) whether attorney fees should have been awarded.

Atlas, of Spokane, Washington, contracted with Shearer to repair one of Shearer's two side-by-side boilers. Atlas sent a crew of five men, including Tom Runcorn as foreman, to make major repairs including the replacement of tubes and brickwork inside boiler number 1 while boiler number 2 was still active and supplying essential steam power to the lumber mill. The repair work required the Atlas employees to climb inside cavities within boiler number 1, one such cavity being called the "mud drum." During the several days of repair, water slowly leaked into the mud drum from a valve above the mud drum. In order to expel the water and other debris created by the repair work, two valves were opened on a "blow down" pipe outside the boiler extending from the bottom of the mud drum. This blow down pipe connected to the blow down pipe from boiler number 2, each boiler having two valves between it and the common connection which eventually led to a waste pond. Under normal operating conditions, the blow down valves on an active boiler are periodically opened to discharge, with pressurized steam, the impurities collected in the boiler during the steam generating process.

On the date of the accident, Tom Runcorn was inside the mud drum of boiler number 1, using a garden hose to flush water and debris out the blow down line on which both boiler number 1 valves were in the open position. An employee of Shearer, a "fireman" whose job it was to operate boiler number 2, opened the blow down valves on boiler number 2. The pressurized steam from boiler number 2 came through the common pipe back into the mud drum of boiler number 1 and severely burned Runcorn over much of his body.

Runcorn received $22,031.99 in workmen's compensation benefits from his em-

ployer's surety, the Washington Department of Labor & Industries insurance fund contributed to by his employer, Atlas. Runcorn and his wife subsequently filed this third party action against Shearer for its alleged negligence in causing the accident. A jury trial was held and a special verdict apportioned the negligence as ·follows: 10% to Runcorn; 60% to Shearer; and 30% to Atlas who was not a party to the action. The jury determined that the total damages sustained by Runcorn was $825,000, and the total damages for loss of consortium sustained by Linda Runcorn was $100,000. The district court then reduced Tom Runcorn's damages by 10%, the percentage of his negligence, but refused to reduce the award by the amount of the workmen's compensation benefits already received. The court also refused to reduce Linda Runcorn's award by the 10% negligence attributable to her husband. No attorney fees were allowed to the plaintiffs.

I

We first address the issue of whether Shearer is a statutory employer to Runcorn and exempt from liability. Shearer argues that under Idaho law it is a statutory employer and thus immune from tort liability by the exclusive liability rule set out in I.C. § 72–209(1). Shearer does fall within the definition of "employer" contained in I.C. § 72–102(10):

> "72–102. **Definitions.**—Words and terms used in the workmen's compensation law, unless the context otherwise requires, are defined in the subsections which follow.
>
> . . . .
>
> "(10) 'Employer' means any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there em-

ployed. If the employer is secured, it means his surety so far as applicable."

There is no dispute that Shearer "contracted the services of another." There is no dispute that Shearer is the "owner" of the premises where the injury occurred and the "proprietor or operator of the business there carried on." The operation of a lumber mill business necessarily carries with it the maintenance of the boilers providing power. *Cf Miller v. FMC Corp.*, 93 Idaho 695, 471 P.2d 550 (1970) (plant maintenance is within the business of reducing and refining phosphate); *see also Loughmiller v. Interstate Farmlines, Inc.*, 107 Idaho 179, 687 P.2d 569 (1984) (lessor, who leased a truck with a driver was statutory employer to driver). The test of whether a party is an "employer" under the definition of I.C. § 72–102(10) does not require the employer to control the means by which the work is performed. *Miller v. FMC Corp., supra; Adam v. Titan Equipment Supply Corp.*, 93 Idaho 644, 470 P.2d 409 (1970). Accordingly, the trial court erred in this case by instructing the jury in Instruction No. 31:

> "The integral test [of employer under I.C. § 72–102(10) ] is whether the contract gives, or Shearer Lumber Products, Inc., assumed, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract."

The right-to-control test is relevant in determining whether the injured person is an employee covered by workmen's compensation, or whether the person is an independent contractor not entitled to workmen's compensation protection, *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976). The right-to-control test may also be relevant if for some reason in a particular case a distinction must be made between a direct employer and a non-direct employer. In the present case the right-to-control test has no relevance since there is no dispute that Runcorn was an employee under the control of Atlas, his direct employer. However, under the expanded definition of "employer" in I.C. § 72–102(10), which was "de-

signed to prevent an employer from avoiding liability under the workmen's compensation statutes by subcontracting the work to others" who may be irresponsible and not insure their employees, *Adam v. Titan Equipment Supply Corp.*, 93 Idaho at 646, 470 P.2d at 411, an employee may have more than one employer. The definition includes the direct employer/subcontractor, a contractor over the subcontractor, and a qualifying proprietor or operator of a business over the contractor. This does *not* mean that the qualifying proprietor or operator is the statutory employer of the contractor and subcontractor; it *does* mean that the qualifying proprietor or operator is the "employer" of the contractor's and subcontractor's *employees*, and the contractor is also an "employer" of the subcontractor's *employees*. *See* I.C. § 72–216(1). In the present case, both Atlas as the direct employer and Shearer as the "proprietor or operator of the business there carried on," qualify as Runcorn's employers. I.C. § 72–102(10).

▪ Having clarified the definition of a statutory employer, we now must decide whether the status of a statutory employer exempts all such employers from tort liability as third parties under I.C. § 72–223. The defendants cite *Adam* and *Miller*, along with *dicta*[1] in *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 603 P.2d 156 (1979), for the proposition that all employers within the definition of I.C. § 72–102(10) are immune from tort liability as a third party. We do not agree. The exclusive liability of an employer under I.C. § 72–209(1), and the exclusive remedies of an employee under I.C. § 72–211, are both specifically made "subject to the provisions of section 72–223." I.C. § 72–223 provides that the workmen's compensation law does not disturb the injured employee's right to sue a third party for "legal liability to pay damages," and further that "[s]uch third party *shall include those employers described in section 72–216, having under them contractors or subcontractors who have in fact complied* with the" statute requiring procurement of workmen's compensation insurance. (Emphasis added.) Shearer was an employer, described in I.C. § 72–216, since it had under it a contractor, Atlas, and Shearer was liable for workmen's compensation benefits to Runcorn if Atlas had not provided the coverage. *See Loughmiller v. Interstate Farmlines, Inc.*, 107 Idaho 179, 687 P.2d 569 (1984) (direct employer/contractor failed to provide coverage). However, in this case, Atlas, the direct employer and contractor under Shearer, did in fact provide workmen's compensation coverage to Runcorn. Therefore, Shearer is within the definition of a "third party" in I.C. § 72–223, who can be held liable for damages, even though it also falls within the definition of statutory "employer" under I.C. § 72–102(10).

The statutory scheme described above, by which some statutory employers could be sued and held liable for damages as third parties, was added by amendment to the workmen's compensation law subsequent to our opinions in *Adam* and *Miller*. *See* 1971 Idaho Sess. Laws, ch. 124, § 3, p. 437. While those opinions are still good law on the issue of whether a party is a statutory employer, they have been modified by the 1971 amendment on the issue of whether the status as statutory employers exempts such employers from third party tort actions.

Had the trial court properly instructed the jury that as a matter of law[2] Shearer was the statutory employer of Runcorn,

---

**1.** "If Collier was Tucker's 'employer,' Collier would be relieved of the tort liability imposed on it since a statutory employer is responsible for providing workmen's compensation coverage and, in return, is legally immune from suit by an employee based on injuries suffered in an industrial accident." *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 593, 603 P.2d 156, 159 (1979).

**2.** In this case the issue of statutory employer was a matter of law, since there were no dependent facts at issue. If there are dependent facts at issue, the question of statutory employer would be an issue for the jury.

but still subject to liability as a third party, the jury would have still properly considered the alleged negligence of Shearer. Therefore, the erroneous instruction was harmless error, and the issue of whether Shearer was negligent as a third party was properly submitted to the jury.

## II

We now consider the defendant's assignment of error which raises the issue of whether a spouse's damages for loss of consortium should be reduced by the percentage of comparative negligence assigned to the injured spouse. The trial court refused the reduction. At the time when contributory negligence was a complete bar to recovery, it was held in all American jurisdictions which considered the question, that the contributory negligence of a spouse completely barred the non-physically injured spouse's claim for loss of consortium. See 21 A.L.R.3d 469. Although this Court never directly addressed the issue, we have no reason to believe that a different rule would have been adopted in Idaho. See Clark v. Foster, 87 Idaho 134, 391 P.2d 853 (1964). While that rule was criticized by some writers on the basis that it was harsh, e.g., Harper & James, Law of Torts, § 8.9 (1956); Prosser on Torts, § 119, p. 915 (3rd ed. 1964), it was, nevertheless, the law.

Much of the harshness of the rule has been eliminated with the advent of comparative negligence in which slight contributory negligence does not act as a complete bar to recovery, and a spouse's claim for loss of consortium is similarly not completely barred. The issue has been considered by at least eight courts in comparative negligence jurisdictions such as Idaho, the majority of which have ruled that the loss of consortium damages should be proportionally reduced. Nelson v. Busby, 246 Ark. 247, 437 S.W.2d 799 (1969); White v. Lunder, 66 Wisc.2d 563, 225 N.W.2d 442 (1975); Eggert v. Working, 599 P.2d 1389 (Alaska 1979); Hamm v. City of Milton, 358 So.2d 121 (Fla.App.1978); Maidman v. Stagg, 82 A.D.2d 299, 441 N.Y.S.2d 711

(1981). Contra, Macon v. Seaward Construction Co., 555 F.2d 1 (1977) (interpreting New Hampshire law); Lantis v. Condon, 95 Cal.App.3d 152, 157 Cal.Rptr. 22 (1979); Fletch v. General Rental Co., 383 Mass. 603, 421 N.E.2d 67 (1981). We agree with the majority. The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse. We have held that a wife's claim for loss of consortium against a direct employer, because of its derivative nature, is barred by the exclusive remedies required by the workmen's compensation statutes. Coddington v. City of Lewiston, 96 Idaho 135, 525 P.2d 330 (1974). This rule is consistent with the law in the analogous situation of an heir's action for wrongful death, in which the comparative negligence of the decedent is also considered. Anderson v. Gailey, 97 Idaho 813, 555 P.2d 144 (1976). The Restatement of Torts (Second) § 494 applies this same rule to both wrongful death actions and loss of consortium actions. It would be inconsistent "to hold that an injured party's negligence would bar or limit his recovery for direct injury, but would not affect his spouse's recovery for indirect injury." Maidman v. Stagg, supra, 441 N.Y.S.2d at 715 (emphasis in original). The present case is distinguished from an action in which a person is claiming damages for his or her own personal physical injuries, which claim is non-derivative and not dependent on the spouse's cause of action and negligence attributable to the spouse. See Rogers v. Yellowstone Park Co., 97 Idaho 14, 539 P.2d 566 (1975). The derivative nature of a claim for loss of consortium, an interest in consistency in the law, and persuasive authority from other jurisdictions cause us to hold that the trial court erred in refusing to reduce Linda Runcorn's damages by 10%, the percentage of negligence attributable to her husband.

## III

We next address the issue of whether Runcorn's recovery against Shearer should

be reduced by $22,031.99, the amount of workmen's compensation benefits previously received from the insurer of the direct employer Atlas, who was found to be 30% comparatively negligent. On this issue the law of Idaho is in conflict with the Washington law, which the respondents argue we should apply.

■ The difference in laws stems from different statutory and case law schemes balancing the exclusive liability/workmen's compensation statutes with the comparative negligence/contribution statutes. Several different statutory approaches to this issue have developed in the United States. One statutory scheme, such as enacted in Illinois, places higher priority on contribution, infringing upon exclusive liability, by allowing a third party sued as the result of an industrial accident to hold the employer liable for the full percentage of the employer's comparative negligence or for common law indemnification. *See Skinner v. Reed-Prentice Division,* etc., 70 Ill.2d 1, 15 Ill. Dec. 829, 374 N.E.2d 437 (1978). At the other end of the spectrum is the scheme adopted in Washington, which allows absolutely no liability or negligence to be attributed to the employer in any action. A third party cannot defend on the ground that the employer was jointly negligent, and regardless of the employer's negligence the employer or its insurer [3] has an automatic lien or subrogation rights to the third party recovery for the amount of the compensation benefits paid. *Glass v. Stahl Specialty Co.,* 97 Wash.2d 880, 652 P.2d 948 (1982); *Kelley v. Howard S. Wright Construction Co.,* 90 Wash.2d 323, 582 P.2d 500 (1978); *Seattle First Natl. Bank v. Shoreline Concrete Co.,* 91 Wash.2d 230, 588 P.2d 1308 (1978). The Washington court concedes that "requiring one wrong-

doer to shoulder all the damages when the other wrongdoer is an employer may be unfair," *Glass v. Stahl Specialty Co.,* 652 P.2d at 953, and that "it might very well be that it would be wiser to provide by legislation for the result" that the automatic lien on third party recoveries be reduced in appropriate cases, *Courtright v. Sahlberg Equipment, Inc.,* 88 Wash.2d 541, 563 P.2d 1257, 1260 (1977), but in the absence of legislation the court refuses to change its position. *Glass v. Stahl Specialty Co., supra.*

■ Idaho, by statute, has adopted a position between those two extreme views. The Idaho statutes take a compromise position setting up a scheme whereby the injured employee and/or the subrogated employer may hold a third party liable in tort for damages. I.C. § 72–223. A third party who has paid damages for an injury arising out of the employment of the injured person may hold the employer liable if the injury was concurrently "caused by the breach of any duty or obligation owed by the employer to such other person," but the employer's liability "shall be limited to the amount of compensation for which the employer is liable under" workmen's compensation.[4] I.C. § 72–209(2). Our case law implementing I.C. §§ 72–209 and –223 has held that the insurer of an employer who is jointly negligent with the third party is not allowed the statutory subrogation rights or reimbursement for workmen's compensation benefits paid to the injured employee allowed by I.C. § 72–223(3). *Tucker v. Union Oil Co. of Calif.,* 100 Idaho 590, 603 P.2d 156 (1979); *Liberty Mutual Ins. Co. v. Adams,* 91 Idaho 151, 417 P.2d 417 (1966). The third party may defend on the basis that the employer was

---

3. The mandatory insurer in Washington for all employers, other than those qualifying as self-insurers, is an insurance fund administered by the Department of Labor & Industries of the State of Washington.

4. This rule applies unless the third party and employer "agree to share liability in a different manner," I.C. § 72–209(2), such as an express indemnity contract. Accordingly, we have interpreted the statutes to allow a third party who

has paid damages to subsequently sue the employer on a common law indemnity claim limited to the amount of workmen's compensation or for possible full indemnity under an express contract. *Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980). We have never considered a case in which a third party has sued the employer for the obligation of contribution as a joint tortfeasor.

negligent whether or not the employer is a party to the action. A special verdict form allows the jury to assign the appropriate percentage of liability to the employer in addition to the injured party and the third party. The third party is then allowed a reduction in damages by the percentage of liability attributed to the employer not to exceed the amount of workmen's compensation benefits paid, and the insurer's right to reimbursement by that same amount is forfeited. *See Schneider v. Farmers Merchant, Inc.,* 106 Idaho 241, 678 P.2d 33 (1983); *Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980); *Tucker v. Union Oil Co. of Calif., supra.* The scheme just described balances and substantially serves the sometimes competing interests of: (1) the exclusive liability of the employer under the workmen's compensation statutes; (2) the policy against double recovery by an injured victim; (3) the policy against allowing an employer or its insurer to profit from the employer's own wrong; (4) the third party's right of contribution for the comparative negligence of others, *i.e.,* the employer. Consistent with the law in Idaho, we hold that the trial court erred by refusing to reduce the damages by $22,031.99, the workmen's compensation benefits already received by Runcorn.

■ Plaintiffs argue that such a reduction will result in a double deduction for the workmen's compensation benefits received. This argument, which the trial court relied on, is based on the assumption that the Washington Department of Labor & Industries has an enforceable lien in Idaho on Runcorn's third party recovery. The status of the Washington agency in Idaho is no different than any other workmen's compensation insurer in Idaho. We have held that "when an employer's negligence, together with the negligence of a third party . . ., concurrently contributed to the injury of an employee, neither the employer nor *his surety* may obtain reimbursement for workmen's compensation benefits from an employee who recovers damages from a third party." *Tucker,* 100 Idaho at 603, 603 P.2d at 169 (emphasis added). The factual question of Atlas's negligence has been fully litigated, and that determination is binding both on Atlas and its surety, the Department of Labor & Industries. *See Pocatello Industrial Park Co. v. Steel West, Inc., supra.* I.C. § 72–223(2), the section which authorizes the action by the employee against a negligent third party, provides that the "[a]ction may be instituted against such third party by the employee, or in the event compensation has been claimed and awarded, by the employee and the employer jointly, in the employee's name, or, if the employee refuses to participate in such action, by the employer in the employee's name." There is but one cause of action under the statute, and one right to subrogation, and if the action is brought in the employee's name the employer and its surety are bound by estoppel to the results of that trial conducted by the employee. *See Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980).

■ Plaintiffs argue that a reciprocity agreement entered into by the Idaho Accident Board, pursuant to authority granted in I.C. § 72–222, with the Washington Department of Labor & Industries (DOLAI) requires the application of Washington law to this case. The Washington agency filed an *amicus* brief with this Court arguing the same proposition. The agreement provides, in part:

"5. The Washington DOLAI in keeping with the provisions of the Washington WC law will provide protection of any Washington employer under its jurisdiction and benefits to any Washington workman injured in the course of his employment while working in the state of Idaho."

Plaintiff argues that under this term, Atlas, a Washington employer, is entitled to the "protection" under Washington law to be free from having liability attributed to it and also to have its insurer, the Department of Labor & Industries, collect reimbursement of the workmen's compensation paid to Runcorn, which would result in a

credit to Atlas's account. Plaintiffs also argue that Runcorn, a Washington employee, is entitled to the "benefits" under Washington law which does not allow the defense of an employer's joint negligence or a reduction in damages due to the negligence of an employer. We cannot accept such an interpretation of the reciprocity agreement. We interpret "protection" to mean insurance coverage for the employer and "benefits" to mean payments from workmen's compensation insurance for injuries to an employee. The document merely agrees as to who will provide coverage and who will pay benefits for workers crossing the state line. To interpret the reciprocity agreement as urged by plaintiffs would require Washington tort law, as well as all aspects of Washington's workmen's compensation laws, to be applied by an Idaho court in a tort action against an Idaho resident for a tort occurring in Idaho. We do not believe that the reciprocity agreement applies to third party tort actions, or that the legislature gave such authority to the Idaho Industrial Accident Board through I.C. § 72–222.

 It is possible that in a different set of circumstances we might choose to apply Washington law as the appropriate law when confronted by a conflict of laws. However, in this case both plaintiffs [5] and defendant are Idaho residents. The tort took place in Idaho. Idaho has strong interests and policies which would be undermined by the application of the less equitable Washington laws. Therefore, we choose to apply the law of Idaho, the forum state.

### IV

 The last basis for appeal asserted by defendant is that the trial court erred by excluding a portion of one of its expert's testimony. The expert would have testified that it was the customary duty of a repair contractor to isolate a boiler under repair. Even if such exclusion was erroneous, it was harmless error since two other experts subsequently gave the same testimony. The excluded testimony would be merely cumulative.

### V

 Plaintiffs cross appeal that there was insufficient evidence to support a jury finding that Runcorn was 10% negligent. We disagree. There was evidence that Tom Runcorn as foreman for Atlas should have isolated boiler number 1 from the active boiler number 2, and also that he should have had a person standing by outside the boiler while anyone was inside the boiler. This is substantial and competent evidence to support the jury finding.

### VI

 Plaintiffs also cross appeal that the trial court erred in refusing to award attorney fees. Plaintiffs' position is: (1) that the failure of Shearer to install a "free blow drain" on the steam header above the mud drum was a violation of the ASME Boiler & Pressure Vessel Code –1971, adopted by I.C. § 39–4109(8) as part of the Idaho Building Code Advisory Act of 1975; (2) that the "free flow drain" would have stopped water from leaking into the mud drum, thus eliminating any reason for Runcorn to open the blow down valves in order to clean out the mud drum; and (3) I.C. § 39–4127 mandates the award of attorney fees to anyone "damaged as a result of a violation" of the act. The trial court stated:

> "Based upon my agreement with defendant's argument that it would be pure speculation whether the jury awarded damages to plaintiff on the basis of common law negligence or a violation of the act; and, in addition, if forced to speculate, it would be the court's speculation that the jury verdict was in fact based upon common law negligence."

We agree with the trial court and find no abuse of discretion in denial of attorney fees to the plaintiffs.

The judgment of the district court is ordered modified to reflect (1) a reduction

---

**5.** Shortly after this cause of action was filed the plaintiffs moved to Idaho.

of 10% in the damages awarded to the wife for loss of consortium; and (2) a reduction in the amount of $22,031.99 for workmen's compensation benefits paid to Runcorn. As so modified, the judgment of the district court is affirmed.

Costs to respondents. No attorney fees allowed.

DONALDSON, C.J., SHEPARD and HUNTLEY, JJ., and TOWLES, J. Pro Tem., concur.