67 F.3d 306
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gary GROVES and Kathy Groves, Husband and wife, Plaintiffs-Appellants,
v.
FIREBIRD RACEWAY, INC., an Idaho Corporation; the National
Hot Rod Association, a California Corporation;
John Does I through V, Defendants-Appellees.
 No. 94-35541.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1995.
Decided Sept. 28, 1995.
Order Amending Memorandum and Denying Rehearing Oct. 25, 1995.
 
 1
 Before: ALARCON and CANBY, Circuit Judges and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Gary Groves ("Mr. Groves") and Kathy Groves ("Mrs. Groves") appeal from the grant of summary judgment in favor of Firebird Raceway, Inc. ("Firebird") and the National Hot Rod Association ("NHRA"). Mr. Groves contends that the district court erred in concluding that the release of tort liability signed by Mr. Groves is unambiguous and does not violate public policy. Mrs. Groves maintains that the district court erred in concluding that the agreement signed by her husband releasing Firebird of tort liability for the physical injuries sustained by Mr. Groves also precludes her separate claim for loss of consortium.
 
 
 4
 We affirm the grant of summary judgment regarding the validity of the release signed by Mr. Groves because it is not ambiguous and does not violate public policy. We reverse the judgment dismissing Mrs. Groves' claim for loss of consortium because we conclude that the Idaho Supreme Court would hold that the agreement signed by Mr. Groves releasing Firebird of any tort liability sustained by Mr. Groves does not bar her separate claim for loss of consortium.
 
 
 5
 * Mr. Groves builds and races automobiles. Firebird owns and operates the Firebird Raceway near Emmett, Idaho. Firebird conducts races pursuant to the NHRA's mandatory rules and regulations.
 
 
 6
 On August 14, 1992, Mr. Groves paid the entry fee and signed a document entitled, "Release and Waiver of Liability and Indemnity Agreement," in order to participate in the Pepsi Nightfire National Races at Firebird Raceway. In the past, Mr. Groves had signed similar agreements before participating in other racing events. The release reads in pertinent part:
 
 
 7
 EACH OF THE UNDERSIGNED ...
 
 
 8
 2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the ... "Releasees," FROM ALL LIABILITY TO THE UNDERSIGNED ... FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.
 
 
 9
 3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and each of them FROM ANY LOSS, LIABILITY, DAMAGE, OR COST they may incur arising out of or related to the EVENT(S) WHETHER CAUSED BY THE NEGLIGENCE OF RELEASEES OR OTHERWISE.
 
 
 10
 4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related to the EVENT(S) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.
 
 
 11
 5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damages. Each of THE UNDERSIGNED also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.
 
 
 12
 6. HEREBY agrees that this Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the laws of the Province or State in which the Event(s) is/are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.
 
 
 13
 I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.
 
 
 14
 During a race, Mr. Groves' vehicle crashed and burst into flames. Firebird's employees responded to the accident and extinguished the fire. Mr. Groves suffered serious burns and incurred substantial medical costs.
 
 
 15
 On August 12, 1993, the Groves filed a complaint in the district court against Firebird in this diversity action containing claims for negligence and loss of consortium. On April 26, 1994, the district court granted summary judgment in favor of Firebird and entered a final judgment dismissing this action.
 
 II
 
 16
 Mr. Groves alleges that the district court erred in granting Firebird's motion for summary judgment based on its conclusion that the release barred recovery of his claim of negligent firefighting. We review a grant of summary judgment de novo. Reyes v. Atlantic Richfield Co., 12 F.3d 1464, 1468 (9th Cir.1993). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. Id.
 
 
 17
 * Mr. Groves contends that the release does not bar claims for negligent firefighting. Specifically, Mr. Groves asserts that the terms "EVENT(S)" and "NEGLIGENT RESCUE" are undefined, thereby rendering the release ambiguous and unenforceable.
 
 
 18
 A federal court, in exercising its diversity jurisdiction, must apply state law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Accordingly, Idaho law applies to the matter sub judice. The Idaho Supreme Court has recognized that "a party may contract to absolve [itself] from certain duties and liabilities[.]" Anderson & Nafziger v. G.T. Newcomb, Inc., 595 P.2d 709, 712 (Idaho 1979). Such contracts must "speak clearly and directly to the conduct of the defendant which caused the harm at issue." Id. Where the clear purpose of the release is to preclude all liability, however, the parties need not have contemplated the precise occurrence which resulted in harm. Rawlings v. Layne & Bowler Pump Co., 465 P.2d 107, 110 (Idaho 1970).
 
 
 19
 Although the agreement does not specifically preclude negligent firefighting claims, read in its entirety, its effect is to bar such claims. The release provides that, "[Mr. Groves] ... COVENANTS NOT TO SUE [Firebird and the NHRA] ... FOR ANY AND ALL LOSS ... ON ACCOUNT OF INJURY TO THE PERSON ... CAUSED BY THE NEGLIGENCE OF [Firebird and the NHRA] ... INCLUDING NEGLIGENT RESCUE OPERATIONS [.]" (emphasis added). In addition, the release contains provisions under which Mr. Groves expressly acknowledges that he recognized that the "ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS", and assumes "FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY[.]" In fact, Mr. Groves acknowledges that "INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS." Nevertheless, he agreed to absolve Firebird and the NHRA from all liability. The release is drafted in clear and unambiguous terms.
 
 
 20
 Because we hold that the release is clear and unambiguous, we do not address Mr. Groves' contention that he did not intend the release to bar negligent firefighting claims. See e.g. Dille v. Doerr Distrib. Co., 867 P.2d 997, 999 (Idaho Ct.App.1994) (extrinsic evidence is only admissible to discern the meaning of a contract if the contract is ambiguous).
 
 B
 
 21
 Mr. Groves contends that the release is unenforceable because it violates public policy. Under Idaho law, contracts that violate public policy are void. Salinas v. Veirstra, 695 P.2d 369, 375 (Idaho 1985). Express agreements which exempt one party from liability for negligence may violate public policy if: "(1) one party is at an obvious disadvantage in bargaining power; [or] (2) a public duty is involved." Rawlings, 465 P.2d at 111.
 
 
 22
 Mr. Groves failed to present any evidence to the district court to support the contention that he raises before this court that he was at an obvious disadvantage in bargaining power. The district court's order granting Firebird's motion for summary judgment notes that "[t]he plaintiffs do not contend that Gary Groves, being a person who makes his living building and racing cars, was at an obvious disadvantage in bargaining power when he signed the release." The Supreme Court has instructed that to avoid an adverse ruling on a motion for summary judgment, the nonmovant must "designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)). Mr. Groves has failed to demonstrate that there is a genuine issue of material fact concerning whether he was at an obvious disadvantage in bargaining power.
 
 
 23
 Further, the Idaho legislature has not imposed a public duty on persons involved in conducting automobile races. The Rawlings court cited public utilities and common carriers as examples of entities engaged in a "public duty." Rawlings, 465 P.2d at 111. As interpreted by the Idaho Supreme Court, the legislature can create a "public duty." Lee v. Sun Valley Co., 695 P.2d 361, 363 (Idaho 1984). Under Idaho law, a public duty is created, when:
 
 
 24
 the legislature has addressed the rights and duties pertaining to personal injuries arising out of the relationship between two groups, i.e., employers/employees, outfitters and guides/participants, and has granted limited liability to one group in exchange for adherence to specific duties, then such duties become a "public duty" within the exception to the general rule validating exculpatory contracts.
 
 
 25
 Id. at 364.
 
 
 26
 Mr. Groves relies on Lee to support his position that Firebird owes him a "public duty" under Idaho law. Mr. Groves' reliance on Lee is misplaced. In Lee, the appellant argued that the release agreement was invalid because a statute that controlled the relationships between outfitters and guides and tourists imposed a public duty upon the Sun Valley Company. Id. at 363. Sun Valley was licensed by the state as an outfitter and guide. Id. It provided equestrian trail rides for tourists. Id. at 362. The Idaho Supreme Court held that the release agreement did not absolve Sun Valley of its statutory "public duty" because the legislature expressly intended the statute to establish a standard of care within the tourist industry. Id. at 363.
 
 
 27
 In contrast to Lee, there is no relevant statute which governs the relationship between race car drivers and racetrack operators. None of the statutes cited by Mr. Groves supports his contention that the Idaho legislature has created a public duty that applies to automobile races. Sections 18-401 and 32-607 cited by Mr. Groves in support of his argument that a public duty cannot be waived, concern a husband's willful neglect to support his wife. Section 32-901 merely delineates marital obligations of mutual respect, fidelity and support.
 
 
 28
 Mr. Groves' reliance on section 29-113 is equally misplaced. Section 29-113 addresses personal injury releases. It applies only to post-injury releases, not the type of pre-injury agreement signed by Mr. Groves. Finally, section 6-801, which provides that Idaho employs the doctrine of comparative negligence, is inapplicable because comparative negligence is not an issue in the instant action.
 
 
 29
 In summary, Firebird's activities are not similar to the public duties performed by a public utility or a common carrier. Further, the Idaho legislature has not enacted legislation governing the automobile racing industry. Accordingly, the release does not violate Idaho public policy.
 
 III
 
 30
 Mrs. Groves contends that the district court erred in granting Firebird's motion for summary judgment based on its conclusion that the release signed by Mr. Groves precludes her claim for loss of consortium. The district court rejected Mrs. Groves' contentions that a claim for loss of consortium is a separate and independent cause of action. It was also unmoved by her argument that she cannot be bound by a release agreement she did not sign.
 
 
 31
 The district court acknowledged that the majority of the states that have confronted the issue recognize loss of consortium as a separate and independent cause of action. The district court declined, however, to follow the overwhelming weight of authority. Relying on Runcorn v. Shearer Lumber Products Inc., 690 P.2d 324 (Idaho 1984), which states that a "claim for loss of consortium is a wholly derivative cause of action...." Id. at 329 (emphasis added), the district court ruled that Mrs. Groves' loss of consortium action was contingent upon the continued survival of Mr. Groves' claim for negligence against Firebird. The court concluded that when Mr. Groves signed an agreement releasing Firebird from liability for negligence, he gave up his claim for damages for Firebird's alleged tortious conduct. Therefore, the court found that Mrs. Groves' derivative cause of action for loss of consortium was also barred. There are no Idaho appellate decisions that address the question whether a release signed by a person subsequently injured by an alleged tortfeasor's negligent conduct also precludes his or her spouse from recovering for loss of consortium. Thus, "[i]n the absence of such express guidance, we must interpret and apply the law as we predict the state's highest court would interpret and apply it." S & R Metals, Inc. v. C. Itoh & Co. (Am.), Inc., 859 F.2d 814, 816 (9th Cir.1988).
 
 
 32
 * The fact that the Idaho Supreme Court has held that a loss of consortium claim is derivative is not dispositive of the question whether the release signed by Mr. Groves bars Mrs. Groves claim. The Idaho Supreme Court has held that a spouse has the right to recover damages for loss of consortium resulting from a third party's tortious injury to his or her spouse. Rindlisbaker v. Wilson, 519 P.2d 421, 425 (Idaho 1974). In Rindlisbaker, the Idaho Supreme Court was confronted with the question whether a wife's claim for loss of consortium was separate from her husband's negligence claim against a manufacturer and distributor of a fertilizer applicator and a fertilizer dealer. Id. at 424. In that matter, the jury returned a verdict in favor of F. Clair Rindlisbaker and his wife, Bonnie, in the amounts of $400,000 and $15,000, respectively. Id. On appeal, the manufacturer and distributor and the dealer asserted that the trial court erred in permitting Bonnie to assert a separate cause of action for the loss of "services" and "support" of her husband. Id. They claimed that Bonnie's cause of action was duplicative of her husband's claim for lost wages. Id. The Idaho Supreme Court noted that if "Mrs. Rindlisbaker's claim for support was for pecuniary support, it should not have been allowed in that it was redundant with Mr. Rindlisbaker's claim for loss of wages." Id. at 425. The court stated, however, that the substance of "Mrs. Rindlisbaker's claim was for the loss of consortium, care, comfort, society, companionship, services and protection of her husband." Id. at 424. Accordingly, the Idaho Supreme Court held that the trial court did not clearly err in allowing Mrs. Rindlisbaker to pursue her separate cause of action for loss of consortium. Id. at 425.
 
 
 33
 The fact that a claim for loss of consortium is derivative does not logically support the conclusion reached by the district court that this cause of action is barred when the other spouse enters into a contract releasing the alleged tortfeasor from the risk of an award for damages in a tort action. Precisely the same issue was addressed by the Supreme Judicial Court of Massachusetts in Ferriter v. Daniel O'Connell's Sons, Inc., 413 N.E.2d 690 (Mass.1980). In Ferriter, the court held that the derivative character of a wife's claim of loss of consortium does not preclude her from pursuing an action for damages on this theory, even though her husband's tort cause of action was barred by statute. Id. at 697. In that matter, Michael Ferriter was injured in a work related accident. Id. at 690. He accepted worker's compensation benefits. Id. Pursuant to Massachusetts law, his acceptance of such benefits precluded him from filing a tort action against his employer. Id. at 698. Thereafter, Michael's wife, Judith, filed an action against Michael's employer for loss of consortium. Id. at 691.
 
 
 34
 The defendant moved for summary judgment based upon his contention that Judith's claim was barred by Michael's acceptance of worker's compensation benefits. Id. The trial court denied the employer's motion. Id. On appeal, the employer argued that because the wife's loss of consortium claim was derivative, her claim, like her husband's, was barred by the Worker's Compensation Act. Id. at 703 n. 29. The Massachusetts Supreme Judicial Court disagreed. Id. The court stated: "The label 'derivative' tells little about the state of affairs it purports to describe." Id. The court held that, notwithstanding the fact that her husband was barred from suing for tort damages, Judith had a viable claim for loss of consortium. Id.[1]
 
 
 35
 Courts in other states have recognized that although a claim for loss of consortium is "viewed as derivative, and not cognizable unless the defendant is liable to the injured spouse, a loss of consortium cause of action constitutes a separate and distinct cause of action personal to the deprived spouse...." Champagne v. State Farm Mut. Auto. Ins. Co., 586 N.Y.S.2d 813, 815 (N.Y.App.Div.1992); accord Orange County v. Piper, 523 So.2d 196, 198 (Fla.Dist.Ct.App.1988); ("loss of consortium is a separate cause of action belonging to the spouse of the injured married partner, and though derivative in the sense of being occasioned by injury to the spouse, it is a direct injury to the spouse who has lost the consortium."); Barchfeld v. Nunley, 577 A.2d 910, 912 (Pa.Super.Ct.1990) ("loss of consortium claim is a derivative of the personal injury claim, but, at the same time, it is separate and distinct from the [physically injured] spouse's personal injury claim."); Bowen v. Kil-Kare, Inc., 585 N.E.2d 384, 391 (Ohio 1992) (a claim for loss of consortium is a separate and distinct injury that is personal to the indirectly injured spouse); Torchia v. Aetna Casualty & Sur. Co., 804 S.W.2d 219, 225 (Tex.Ct.App.1991) (although a wife's claim for loss of consortium is derivative because liability of the tortfeasor to her husband must first be established, the claim is nevertheless independent from her husband's negligence action).
 
 
 36
 A party who seeks damages for loss of consortium is not seeking compensation for injury to the marital unit. Lantis v. Condon, 157 Cal.Rptr. 22, 25 (Cal.Ct.App.1979). Instead, that party is seeking compensation for the "physical, psychological, and emotional pain" that results when the other spouse is injured and can no longer provide the "love, affection, companionship, comfort, or sexual relations concomitant with a normal married life." Id. at 24. The Idaho Supreme Court has used similar language in defining the injury that flows from loss of consortium. In Rindlisbaker, the court stated that the non-physically injured spouse seeks compensation for the "loss of the consortium, care, comfort, society, companionship, services and protection" of the other spouse. Rindlisbaker, 519 P.2d at 425. Because the injury to the party claiming damages for loss of consortium is personal to that party, it is clearly separate from the other spouse's claim for compensation for the physical injuries resulting from a third-party's negligent or tortious conduct. Arnold v. Shawano County, 317 N.W.2d 161, 164 (Wis.Ct.App.1982), aff'd, 330 N.W.2d 773 (Wis.1983).
 
 B
 
 37
 The district court construed Runcorn v. Shearer Lumber Products, Inc., 690 P.2d 324 (Idaho 1984), as compelling the determination that because a loss of consortium claim is derivative, it cannot be maintained if the other spouse has released the alleged tortfeasor from liability for his conduct in a tort action. We disagree. In Runcorn, the Idaho Supreme Court was confronted with the question whether a wife's judgment should be reduced to reflect the percentage of her husband's comparative fault. Id. at 326. The court stated that a "claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse." Id. at 329. The court reduced the wife's consortium damages by 10%, reflecting the negligence attributable to her husband. Id. The court reasoned that "[i]t would be inconsistent 'to hold that an injured party's negligence would bar or limit his recovery for direct injury, but would not affect his spouse's recovery for indirect injury.' " (emphasis added) Id. (quoting Maidman v. Stagg, 441 N.Y.S.2d 711, 715 (N.Y.App.Div.1981)).
 
 
 38
 The Idaho Supreme Court did not address in Runcorn the question whether a claim for loss of consortium is barred if the spouse allegedly injured by the alleged tortfeasor has signed a release. Instead, the issue before the Idaho Supreme Court was whether a wife could recover damages for one-hundred percent of the injuries she suffered as a result of the loss of consortium from an alleged tortfeasor, even though her husband's negligence was responsible for part of his injuries.
 
 
 39
 The Court did not hold in Runcorn that a tortfeasor is not liable for a wife's claim for loss of consortium if the trier of fact is persuaded that her husband's negligence contributed to his injuries. To the contrary, the court held that the tortfeasor was liable for damages for the wife's loss of consortium. Her recovery, however, was limited to the percentage of the physical injuries suffered by her husband for which the tortfeasor was responsible under Idaho's comparative fault law. The impact of a release on the right of a spouse to recover for loss of consortium simply was not before the Idaho Supreme Court in Runcorn. Thus, the Runcorn decision does not provide any guidance in determining whether the Idaho Supreme Court would rule that a husband's release agreement will preclude recovery by his spouse on her separate claim for loss of consortium.
 
 
 40
 The court in Runcorn relied on Maidman v. Stagg, 441 N.Y.S.2d 711 (N.Y.App.Div.1981), to reach its conclusion that it is inconsistent "to hold that an injured party's negligence would bar or limit his recovery for direct injury, but would not affect his spouse's recovery for indirect injury." Runcorn, 690 P.2d at 329 (quoting Maidman, 441 N.Y.S.2d at 715). The same New York court that decided Maidman has addressed the question that is currently before us, i.e., whether a release agreement signed by the physically injured spouse prevents the other spouse from pursuing a claim for loss of consortium in Champagne v. State Farm Mut. Auto. Ins. Co., 586 N.Y.S.2d 813, 815 (N.Y.App.Div.1992).
 
 
 41
 In Champagne, a wife filed a claim for loss of consortium damages after her husband signed a release and settled his tort claim against the defendants. Champagne, 586 N.Y.S.2d at 815. The court stated that although a claim for loss of consortium is "viewed as derivative, and not cognizable unless the defendant is liable to the injured spouse, a loss of consortium cause of action constitutes a separate and distinct cause of action personal to the deprived spouse." Id. The court noted in Champagne that the wife was "not a party to the release signed by her injured husband[.]" Id. at 815-16. Thus, the court held that "her cause of action to recover damages for loss of consortium remains viable despite the settlement." Id. at 816. Having followed New York authority in deciding Runcorn, we can assume, in the absence of any contrary indication in any decision of the Idaho Supreme Court, that it would find the reasoning in Champagne equally persuasive.
 
 C
 
 42
 The basis of Mrs. Groves' loss of consortium claim is that Firebird's allegedly tortious conduct caused her harm. The fact that Mr. Groves signed a release does not support a logical inference that Firebird did not commit a tortious act. See Quick v. Crane, 727 P.2d 1187, 1211 (Idaho 1986) (citations omitted) (the question of liability of a defendant who is a party to a release "is wholly immaterial."). Instead, the release signed by Mr. Groves is a "complete abandonment of [his tort] cause of action." Holve v. Draper, 505 P.2d 1265, 1267 (Idaho 1973). The Idaho Supreme Court stated in Quick that "[a] release ... discharges [a] defendant from any possible liability for any tort of which such defendant possibly might have been guilty." Quick, 727 P.2d at 1211-12 (citations omitted). The court noted that "whether [an alleged tortfeasor] was, in fact guilty of tort is immaterial where such defendant does not desire to try out the question and is willing to pay consideration and in good faith secure such release and covenant not to sue." Id. at 1212.
 
 
 43
 Further, the fact that we have upheld the validity of the release as to Mr. Groves does not resolve the question whether Firebird is responsible to Mrs. Groves for loss of consortium. The release signed by Mr. Groves did not mention Mrs. Groves, nor did it refer in any way to her loss of consortium claim. Because she was not a party to the release and did not receive any consideration for abandoning her own claim, Mrs. Groves is not bound by the release. See Lomas & Nettleton Co. v. Tiger Enters., Inc., 585 P.2d 949, 952 (Idaho 1978) (a release is a type of contract); Vance v. Connell, 529 P.2d 1289, 1291 (Idaho 1974) (some consideration is a necessary element to all contracts); see also Karnes v. Quality Pork Processors, 532 N.W.2d 560, 562 (Minn.1995) ("[a]s with any other contract, a release requires consideration...."); Brown v. Kentucky Lottery Corp., 891 S.W.2d 90, 92 (Ky.Ct.App.1995) ("it is well established that a release must be supported by valuable consideration.").
 
 D
 
 44
 There is a split of authority in the eighteen states that have confronted the question whether a spouse is barred from bringing an action for loss of consortium where the other spouse signed a release of liability for a claim of negligence. Sixteen state courts have held that a release agreement or a settlement of the physically injured spouse's claim does not relieve the alleged tortfeasor from liability to the non-physically injured spouse for damages for loss of consortium.
 
 
 45
 Four state courts have held that a pre-injury release agreement executed by a spouse and an alleged tortfeasor does not bar the other spouse's loss of consortium claim. In Arnold v. Shawano County, 317 N.W.2d 161, 164 (Wis.Ct.App.1982), aff'd, 330 N.W.2d 773 (Wis.1983), a case involving strikingly similar facts, Mr. Arnold signed an agreement prior to a race, releasing the race sponsor and others involved in staging the race from liability. Id. at 163. He was injured when his car crashed and burst into flames during a stock car race. Id. Mr. Arnold filed an action for damages based on the alleged negligent conduct of the defendants. Id. at 162-63. Mrs. Arnold filed a separate claim for loss of consortium. Id. at 163. The trial court granted the defendants' motion for summary judgment, dismissing the complaint. Id.
 
 
 46
 The Wisconsin Court of Appeals reversed and remanded. Id. at 165. The Wisconsin Court of Appeals stated that "[e]ven assuming the release bars [Mr. Arnold's] recovery, it does not bar [Mrs. Arnold's] action for loss of consortium." Id. at 163. The court reasoned that "[a] spouse's action for loss of consortium for an injury to the other spouse is a separate cause of action that never belonged to the other spouse." Id. (emphasis added). The court noted that the wife did not sign the release. Id. at 164. Thus, it held that "she did not release her separate cause of action." Id.
 
 
 47
 In Bowen v. Kil-Kare, Inc., 585 N.E.2d 384 (Ohio 1992), the Ohio Supreme Court held that a release agreement entered into by an automobile race participant and the race track owner and operator did not bar his spouse's claim for loss of consortium. Id. at 391. The court indicated that "a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." Id. at 392. The court observed, however, that a spouse's "loss of consortium claim is not necessarily defeated by a valid defense to [the other spouse's] claim against the tortfeasor." Id. at 391. The court held in Bowen that "an action for loss of consortium occasioned by a spouse's injury is a separate and distinct cause of action that cannot be defeated by a contractual release of liability which has not been signed by the spouse who is entitled to maintain the action." Id. at 392. The court reasoned that "[a]s a simple matter of contract law, the release, as a contract, could only bar [a non-physically injured spouse's] claim if [that spouse] was a party to the agreement." Id. See also Huber v. Hovey, 501 N.W.2d 53, 57 (Iowa 1993) (pre-injury release signed by an individual, which was a prerequisite to being allowed in the pit area of a racetrack, did not bar his wife's loss of consortium claim); Barker v. Colorado Region-Sports Car Club of Am., Inc., 532 P.2d 372, 378 (Colo.Ct.App.1974) (same).
 
 
 48
 Five state courts have held that a post-injury release agreement executed by an injured spouse does not bar the other spouse's claim for loss of consortium. In Jones v. Elliot, 551 A.2d 62 (Del.1988), Allen Jones, after being injured in an automobile accident, released his claim against the tortfeasor in exchange for $36,000. Id. at 63. Thereafter, Renaye, Allen's wife, filed an action against the tortfeasor for loss of consortium. Id. The trial court granted summary judgment in favor of the tortfeasor. Id. The trial court found that because Renaye's claim was derivative, it was foreclosed by the release signed by her husband. Id. The Delaware Supreme Court disagreed. Id. at 65. The court stated that a consortium claim is derivative only to the extent that it establishes the tortfeasor's liability to the injured spouse. Id. at 64. It held that although both claims rely on the same conduct of the alleged tortfeasor, they are separate causes of action with separate injuries. Id. at 65. Accordingly, the court held that "[t]he physically injured spouse may not unilaterally extinguish the loss of consortium claim of the other spouse by signing a general release, for the loss of consortium claim is not his to extinguish." Id. at 64-65. See also Aldredge v. Whitney, 591 So.2d 1201, 1206 (La.Ct.App.1991); Huffer v. Kozitza, 375 N.W.2d 480, 482 (Minn.1985); Neely v. Kossove, 487 A.2d 788, 790 (N.J.Super.Ct.1984); Whittlesey v. Miller, 572 S.W.2d 665, 669 (Tex.1978).
 
 
 49
 Seven state courts have held that a settlement agreement executed after the commencement of an action for damages by the physically injured spouse does not bar the non-physically injured spouse's loss of consortium claim. In Brown v. Metzger, 455 N.E.2d 834 (Ill.App.Ct.1983), aff'd, 470 N.E.2d 302 (Ill.1984), Eldridge Brown was injured in an automobile accident. Id. at 836. He settled his personal injury suit against the tortfeasor for $47,500. Id. The tortfeasor moved to dismiss Julia Brown's loss of consortium claim based upon his assertion that the release and settlement executed by Eldridge barred her claim for loss of consortium. Id. The trial court granted the tortfeasor's motion. Id.
 
 
 50
 The Illinois Court of Appeals reversed and remanded. Id. at 838. It explained that a loss of consortium claim "derives from the impaired spouse's action for his injury, it is dependent upon the establishment of the defendant's liability for the impaired spouse's injury." Id. at 837. The court noted, however, that "placing actions in a derivative posture does not give one party the right to waive the rights of another." Id. at 838 (citations omitted). Accordingly, the Illinois court held that "a release executed only by the impaired spouse does not bind the deprived spouse and, therefore, does not bar the deprived spouse's cause of action for loss of consortium." Id. See also Champagne v. State Farm Mut. Auto. Ins. Co., 586 N.Y.S.2d 813, 815 (N.Y.App.Div.1992); Barchfeld v. Nunley, 577 A.2d 910, 912 (Pa.Super.Ct.1990); Oldani v. Lieberman, 375 N.W.2d 778, 781 (Mich.Ct.App.1985); Rosander v. Copco Steel & Eng'r Co., 429 N.E.2d 990, 991 (Ind.Ct.App.1982); Ryter v. Brennan, 291 So.2d 55, 56 (Fla.Dist.Ct.App.), cert. denied, 297 So.2d 836 (Fla.1974); Shepard v. Consumers Coop. Ass'n, 384 S.W.2d 635, 639 (Mo.1964) (en banc).
 
 
 51
 Only one state has held that a spouse's unilateral release of liability for negligence extinguishes the other spouse's claim for loss of consortium. In Conradt v. Four Star Promotions, Inc., 728 P.2d 617 (Wash.Ct.App.1986), David Conradt signed a release as a prerequisite to participating in a demolition race. Id. at 619. He was injured during the race. Id. The Conradts filed a complaint against the operators of the racetrack. Id. The complaint included a claim for Mrs. Conradt's loss of consortium. Id. The trial court granted the race operator's motion for summary judgment and dismissed the complaint. Id.
 
 
 52
 The Court of Appeals of Washington agreed with the trial court. Id. at 622. It stated that David had entered into a contract expressly "agreeing to participate in an undertaking posing known risk." Id. at 621. According to the court, David had voluntarily abandoned the right to sue for any injury. Id. at 622. In discussing Mrs. Conradt's cause of action, the court acknowledged that loss of consortium is a spouse's separate and independent action. Id. It stated, however, that the claim requires tortious injury to the other spouse. Id. The court concluded that "because of the release, no cause of action arose from which a court could conclude a tort had been committed upon Mr. Conradt." Id. Therefore, the court held that his wife's claim was barred because "an element of the consortium claim was lacking." Id.
 
 
 53
 Two of the districts of the Georgia Court of Appeals have reached conflicting conclusions regarding whether a spouse can recover for loss of consortium where the other spouse has signed a pre-injury release. Compare Hall v. Garden Servs., Inc., 332 S.E.2d 3, 5 (Ga.Ct.App.1985) (a release of liability, signed by a wife, precluded her husband's claim for loss of consortium) with Deese v. Parks, 276 S.E.2d 269, 272 (Ga.Ct.App.1981) (an agreement signed by a wife did not "affect the commensurate right of her husband to recover for loss of her services and consortium."). It should be noted that the panel that decided Hall does not mention the Deese decision.
 
 IV
 
 54
 We are persuaded that the Idaho Supreme Court would follow the reasoning of the overwhelming majority of state courts that have addressed this issue and hold that a release executed by a spouse does not bar the other spouse's loss of consortium claim. As noted above, the Idaho Supreme Court has recognized that a spouse has a separate cause of action for loss of consortium. Rindlisbaker, 519 P.2d at 424. We have not found any Idaho Supreme Court decision that would support the conclusion that a spouse's separate cause of action for loss of consortium is within the control of the spouse who was directly injured by a tortfeasor. Such a conclusion would appear to be inconsistent with Idaho cases which recognize that loss of consortium is a separate cause of action.
 
 
 55
 Further, in Runcorn, 690 P.2d 324, the Idaho Supreme Court looked to New York law in deciding that the non-physically injured spouse's loss of consortium claim would be reduced by the percent of negligence attributable to the directly injured spouse. Id. at 329. Accordingly, we believe that the Idaho Supreme Court would likewise look to Champagne, 596 N.Y.S.2d 813, in deciding that a release signed by the directly injured spouse does not bar the other spouse's loss of consortium claim.
 
 
 56
 The release agreement executed by Mr. Groves bars him from recovering damages in a tort action for the injuries he sustained as the result of Firebird's alleged negligence. Mrs. Groves was not a party to the release agreement. Therefore, the release does not preclude her from pursuing her separate claim against the alleged tortfeasor for loss of consortium.
 
 
 57
 The summary judgment in favor of Firebird concerning Mr. Groves' negligence action is AFFIRMED. The summary judgment in favor of Firebird dismissing Mrs. Groves' action for loss of consortium is REVERSED and REMANDED.
 
 
 58
 Before: Alarcon and Canby, Circuit Judges, and Fitzgerald, Senior District Judge.
 
 ORDER AMENDING MEMORANDUM DISPOSITION
 
 59
 Oct. 25, 1995.
 
 
 60
 The memorandum disposition filed September 28, 1995 is amended by adding a footnote at the end of the fourth line from the bottom of page 11 as follows:
 
 
 61
 With this amendment the panel has voted unanimously to deny the petition for rehearing and the motion of certification to the Idaho Supreme Court.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In its petition for a rehearing, Firebird argues that our reliance on the court's analysis in Ferriter, is misplaced because Ferriter is contradicted by Coddington v. City of Lewiston, 525 F.2d 330 (1974). We disagree. These cases are distinguishable. In rejecting the employer's contention that the Massachusetts Workmen's Compensation Act barred a spouse's claim for loss of consortium, the court in Ferriter concluded that "the Workmen's Compensation Act neither expressly nor impliedly barred the [spouse's] remedy." 413 N.E.2d at 698. In Coddington the Idaho Supreme Court held that a spouse's loss of consortium claim was expressly barred by that state's Workmen's Compensation Act by the following language in the statute:
 "The rights and remedies herein granted to an employee on account of a personal injury for which he is entitled to compensation under this act shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury."
 I.C. Sec. 72.203.
 Firebird does not contend that Mrs. Groves' loss of consortium claim is barred by the Idaho Workmen's Compensation Act. No Idaho statute bars an action for loss of consortium under the circumstances presented in this matter.