Shin HYON–SU, Plaintiff–Appellant,

v.

MAEDA PACIFIC CORP.; Tae Jo Corporation, Defendants–Appellees.

Shin HYON–SU, Plaintiff–Appellee,

v.

MAEDA PACIFIC CORP., Defendant–Appellant,

and

Tae Jo Corporation, Defendant.

Nos. 88–2975, 88–15095.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1989.

Decided June 11, 1990.

Frederick J. Kerley, Moore, Ching, Boertzel & Lawlor, Agana, Guam, for defendant-appellee/cross-appellant Maeda Pacific Corp.

James S. Brooks, Brooks & Brooks, Agana, Guam, for plaintiff-appellant/appellee Shin Hyon–Su.

David W. Dooley, Carlsmith, Wichman, Case, Mukai and Ickiki, Timothy A. Stewart, Agana, Guam, for defendant-appellee Tae Jo Corp.

Before WRIGHT, HUG and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Shin Hyon–Su ("Hyon–Su") appeals from the Appellate Division of the District Court of Guam's affirmance of the dismissal of his action against Maeda Pacific Corporation ("Maeda"). The action was dismissed by the Superior Court of Guam on the grounds Hyon–Su's exclusive remedy against Maeda was in workers' compensation. Maeda cross-appeals from the Appellate Division's reversal of the superior court's grant of summary judgment on Hyon–Su's intentional tort claim and its order remanding that claim to the trial court for further proceedings. We affirm as to the appeal and reverse as to the cross-appeal.

## FACTS AND PROCEEDINGS

Maeda is a construction company incorporated in Guam. On September 23, 1984, Maeda contracted with the Public Utility Agency of Guam to construct a collector and interceptor sewer system in Mangilao (hereinafter the "Dairy Road Project"). As general contractor, Maeda was required to furnish all labor, materials, equipment, tools and services necessary to perform and complete all work required for the construction project. Maeda thereafter entered into a subcontract with the Tae Jo Corporation ("Tae Jo") for the excavation work and the digging of manhole trenches. Hyon–Su was employed by Tae Jo to work on the Dairy Road Project as a laborer.

On February 25, 1984, Hyon–Su was assigned to compact the floor of a manhole trench located on the Dairy Road job site. While performing this task, the walls of the trench collapsed upon him, causing serious bodily injury. Both Maeda and Tae Jo carried workers' compensation insurance at the time of the accident. Since the accident, Maeda has paid Hyon–Su temporary disability benefits totalling $23,940.00 and medical benefits totalling $155,544.00.

On February 4, 1986, Hyon–Su filed a complaint in the Superior Court of Guam against Maeda and Tae Jo seeking compensatory and punitive damages for the injuries he suffered as a result of the collapse. In Counts I and II of the complaint, Hyon–Su respectively alleged that Tae Jo's and Maeda's failure to heed the warnings of the safety inspector that shoring and an exit

ladder were needed in their excavations was not only negligent, it constituted "willful, intentional, reckless and wanton" misconduct.

Both defendants subsequently moved for summary judgment on the grounds Hyon–Su's common law action for negligence was barred by the workers' compensation law of Guam which provided his exclusive remedy *unless* the defendants' misconduct, if any, was found to be intentional. On April 10, 1987, the Superior Court of Guam granted Tae Jo's motion for summary judgment on Count I reasoning that, even if Tae Jo had preexisting knowledge of insufficient shoring or the absence of a ladder in the excavation, its conduct only amounted to negligence and thus Hyon–Su's remedy was limited to workers' compensation.

On July 24, 1987, the superior court also granted Maeda's motion for summary judgment on Hyon–Su's complaint. The court began by referring to its earlier decision in which it dismissed the intentional tort claim against Tae Jo "because the facts as averred in the pleadings showed conduct amounting merely to negligence." The court went on to hold that Maeda was a "statutory employer" within the meaning of the Guam Workers' Compensation Act ("GWCA") and thus workers' compensation was Hyon–Su's exclusive remedy against Maeda for his work-related injuries. On July 31, 1987, a judgment was entered dismissing the entire action against both defendants.

Hyon–Su thereafter appealed from the superior court's dismissal of his complaint to the Appellate Division of the District Court of Guam. The Appellate Division affirmed the dismissal as to Tae Jo. However, while it agreed that Maeda was immune from a common law negligence action under the GWCA, it remanded Count II to the superior court for further proceedings because Hyon–Su had alleged intentional and wanton misconduct.

Hyon–Su timely appeals from the Appellate Division's ruling that Maeda is entitled to immunity from this negligence action under the exclusivity provisions of the GWCA.[1] Maeda timely appeals from the Appellate Division's remand of Hyon–Su's intentional tort claim.

## STANDARD OF REVIEW

■ We review de novo the interpretation of local law by the Appellate Division of the District Court of Guam. *People of the Territory of Guam v. Yang*, 850 F.2d 507, 511 (9th Cir.1988) (en banc). A grant of summary judgment is likewise reviewed de novo, using the same standard employed by the trial court under Fed.R.Civ.P. 56(c). *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989).

## DISCUSSION

### I. CROSS–APPEAL BY MAEDA

■ The Appellate Division held that Maeda was immune from a common law negligence action under the GWCA, but remanded Count II to the trial court because Hyon–Su had alleged intentional misconduct. *See San Pedro v. Modular Homes, Inc.*, No. 77–024A (Appellate Division, D.C. Guam Jan. 5, 1979) (workers' compensation not exclusive remedy to employees who allege willful, wanton, or intentional misconduct). Maeda argues that it was error for the Appellate Division to remand the intentional tort claim because the trial court had already determined that its misconduct, if any, was merely negligent and Hyon–Su did not appeal that ruling. The Appellate Division apparently remanded the intentional tort claim on the mistaken assumption the superior court had not reached that issue.

In dismissing the entire complaint against Maeda, the superior court referred to its prior decision in which it held the misconduct alleged in the complaint against Tae Jo amounted "merely to negligence." Because Hyon–Su's allegations of miscon-

---

**1.** While Hyon–Su appeals from the dismissal of his entire action as against both Tae Jo and Maeda, Hyon–Su does not raise any arguments with respect to Tae Jo in his opening briefs. The failure to raise or argue an issue in the appellant's opening brief is deemed a waiver of that issue. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988).

duct against Maeda and Tae Jo were identical, implicit in the superior court's reference is a finding that Maeda's conduct was also merely negligent. This is confirmed by the fact the court dismissed the *entire* action against Maeda, including the intentional tort claim. Therefore, since the superior court had already considered and rejected the intentional tort claim, it was a mistake for the Appellate Division to have remanded that claim to the trial court for a redetermination.[2]

## II. DIRECT APPEAL BY HYON–SU

■ The Appellate Division held that Maeda was Hyon–Su's "statutory employer,"[3] and was therefore immune from a negligence action under the exclusivity provisions of the Guam Workers' Compensation Act, Government Code § 37005 (1981). Section 37005 establishes workers' compensation as the exclusive remedy available to an injured employee from his employer for work-related injuries, "provided that, if an employer fails to secure payment of compensation as required by this Title," the injured employee may either claim workers' compensation or maintain an action at law for damages.[4]

While conceding that Maeda was his "statutory employer," Hyon–Su claims that Guam Government Code § 37004 ("contractor-under" clause) qualifies the conditions under which a statutory employer is entitled to immunity from a negligence action. Section 37004(a) provides:

Every employer shall be liable for and shall secure payment to his employees of the compensation payable under §§ 37007, 37008, and 37009. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

Hyon–Su interprets this provision to mean the exclusivity provision of section 37005 does not apply to statutory employers who are not "required" to provide workers' compensation coverage because such coverage has been secured by the direct employer. Accordingly, Hyon–Su argues that Maeda is not entitled to immunity because Tae Jo secured insurance coverage for all of its employees.

Hyon–Su relies upon *Runcorn v. Shearer Lumber Prods., Inc.*, 107 Idaho 389, 690 P.2d 324 (1984), in which the Idaho Supreme Court held that a general contractor is subject to suit as a third party if the subcontractor has provided compensation coverage. *Runcorn* is inapplicable here, however, because the exclusive liability of an employer under the Idaho Workers' Compensation laws, Idaho Code § 72–209(1), and the exclusive remedy of an employee under section 72–211 are both expressly subject to the provisions of section 72–223. Section 72–223 defines "third parties" who are subject to a common law

---

**2.** Because we find the Appellate Division remanded the intentional tort claim on the mistaken belief that claim was still pending, no further proceedings in the superior court are required and therefore we have jurisdiction to consider the substantive arguments raised in this appeal. *See* 48 U.S.C. § 1424–3(c); *Kiaaina v. Jackson*, 851 F.2d 287, 289 (9th Cir.1988) (per curiam).

**3.** The term "employer" includes "the owner or lessee of premises, or other person who is in fact the proprietor, or operator of the business carried on there but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed." Guam Gov't Code § 37002(j). This definition includes general contractors such as Maeda. *See Mendiola v. Kyowa Shipping Co., Ltd.*, No. 83–0001 (D.C. Guam July 16, 1984).

**4.** Section 37005 provides in pertinent part:

Exclusiveness of Liability. The liability of an employer prescribed in § 37003 shall be exclusive and in place of all other liability of such employer to the employee ...; provided that, if an employer fails to secure payment of compensation as required by this Title, an injured employee or his legal representative, in case death results from the injury, may elect to claim compensation under this Title, or to maintain an action at law or in admiralty for damages on account of such injury or death.

Section 37003(a) provides: "Compensation shall be payable under this Title in the case of disability or death of an employee, but only if the disability or death results from an injury sustained while engaged in industrial or public employment or both as defined in § 37002."

action for damages to " '*include those employers described in section 72–216, having under them contractors or subcontractors who have in fact complied* with the' statute requiring procurement of workmen's compensation insurance." *Id.* at 393, 690 P.2d at 328 (quoting Idaho Code § 72–223). In contrast, the Guam legislature has not expressly limited a statutory employers' exclusive liability to situations where the subcontractor has failed to procure workers' compensation insurance.[5]

For many years, the majority of jurisdictions held that where the subcontractor was insured under a statute limiting the general contractor's workers' compensation liability to uninsured subcontractor situations, the general contractor was a third party subject to common law liability. *See* 2A Larson, *Workmen's Compensation Law* § 72.31(b), at 14–157 (1989). These courts reasoned:

> The law does not accord to the general contractor the choice of either carrying workmen's compensation insurance, or subjecting himself to liability for negligence. The law requires him to carry insurance only if the subcontractor fails to do so.... He may not, however, voluntarily take out insurance that the law does not require and thereby secure freedom from liability for negligence.

*Thomas v. George Hyman Constr. Co.,* 173 F.Supp. 381, 383 (D.D.C.1959).

There has been a "marked trend" in more recent times, however, to grant immunity to the general contractor even where the subcontractor is insured. *See*

2A Larson § 72.31(b), at 14–157, 14–165–70. This trend can be seen in *Washington Metro. Area Transit Auth. v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), wherein the Supreme Court extensively analyzed sections 4(a) and 5(a) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 904(a) [6] and 905(a),[7] which at that time were virtually identical to sections 37004 and 37005 of the GWCA. The Court held that general contractors are immune from tort liability under section 905(a) "[s]o long as [they] have not defaulted on [their] statutory obligation to secure back-up compensation for subcontractor employees." *Id.* at 940, 104 S.Ct. at 2835.

In *Johnson,* the general contractor, Washington Metropolitan Area Transit Authority ("WMATA"), purchased a comprehensive "wrap-up" workers' compensation insurance policy on behalf of all the subcontractors which covered all workers employed at the site. The issue arose after employees of several subcontractors who had not secured their own workers' compensation insurance brought tort actions against WMATA to recover for work-related injuries. The trial courts dismissed the actions holding that WMATA had "earned" immunity under section 905(a) by purchasing workers' compensation coverage for employees of the subcontractors. The D.C. Court of Appeals reversed, reasoning that "[i]t is only by providing compensation insurance *when the subcontractors fail to do so* that WMATA obtains immunity as a statutory employer." *Johnson v. Bechtel*

---

**5.** Section 37033 discusses "third parties" as follows:

> Compensation for Injuries where third persons are liable. When an injury for which compensation is payable under this Title shall have been sustained under circumstances creating in some person other than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this Title or obtain damages from or proceed at law against that other person to recover damages.

**6.** Section 904(a) provided:

> Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under [33 U.S.C.

§§ 907–909]. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

**7.** Section 905(a) provided:

> The liability of an employer prescribed in section [904] shall be exclusive and in place of all other liability of such employer to the employee ..., except that if an employer fails to secure payment of compensation as required by the Act, an injured employee ... may elect to claim compensation under this Act, or to maintain an action at law or in admiralty for damages on account of such injury or death.

*Assocs. Professional Corp.*, 717 F.2d 574, 582 (D.C.Cir.1983). Because WMATA "pre-empted" the subcontractors by purchasing the "wrap-up" policy prior to giving them the opportunity to refuse to secure coverage, the court held WMATA's action in providing coverage for all employees was not statutorily required and thus the immunity of section 905(a) did not apply.

The Supreme Court reversed, noting "the Court of Appeals' view [that general contractors are entitled to the reward of tort immunity only when the contractor has been statutorily required to secure compensation] is difficult to square with the language of the LHWCA." 467 U.S. at 937, 104 S.Ct. at 2834. "Immunity is not cast as a reward for employers that secure compensation; rather, loss of immunity is levied as a penalty on those that neglect to meet their statutory obligations." *Id.* "Taken together, [sections 904(a) and 905(a) ] would appear to grant a general contractor immunity from tort suits brought by subcontractor employees unless

the contractor has neglected to secure workers' compensation coverage after the subcontractor failed to do so." *Id.* at 938, 104 S.Ct. at 2835. "Besides being faithful to the plain language of the statute," the Court noted "this reading furthers the policy underlying the LHWCA, which is to ensure that workers are not deprived workers' compensation coverage."[8] *Id.* Since the subcontractors as the named insureds in the "wrap-up" policy technically did not default on their primary statutory obligations, WMATA never had an opportunity to default on its own statutory obligations and hence the Court held it was immune from suit under section 905(a).[9]

An identical construction and holding is necessary in this case as well.[10] As in *Johnson*, the "most natural reading" of sections 37004 and 37005 is to grant a general contractor immunity from tort suits so long as it does not fail to meet its statutory obligation to secure compensation. As in *Johnson*, that immunity is not lost in situations where the subcontractor also fulfills its statutory obligations. *See*

---

**8.** The Court explained:
> If the benefits of securing compensation insurance—that is, tort immunity—did not accrue to contractors until subcontractors had affirmatively elected to default, then contractors would be reluctant to incur the considerable expense of securing compensation insurance until they were absolutely convinced that subcontractors were in statutory default. Inevitably, such a rule would create gaps in workers' compensation coverage—a result Congress clearly wanted to avoid.

467 U.S. at 938, 104 S.Ct. at 2835.

**9.** The Court noted that the subcontractors were also immune from suit: "Because these subcontractors are also 'employers' for purposes of [section 904(a) ] and because they have not failed to secure the compensation required by the Act, they would also appear entitled to immunity from tort liability." 467 U.S. at 940–41 n. 14, 104 S.Ct. at 2836 n. 14.

**10.** We note that in 1984, Congress amended the LHWCA in an attempt "to reverse the Supreme Court's holding in *Johnson*." *Keener v. Washington Metro. Area Transit Auth.*, 800 F.2d 1173, 1175 (D.C.Cir.1986). The amendments were intended to strip *Johnson* of "'any precedential effect' in pending as well as future cases." *Id.* at 1177 (quoting H.R.Rep. No. 98–1027, 98th Cong., 2d Sess. at 24 (1984), U.S.Code Cong. &

Admin.News 1984, p. 2734). Section 904(a) was amended as follows:
> Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under section 7, 8, and 9. In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.

Section 905(a) was amended as follows:
> The liability of an employer prescribed in section [904] shall be exclusive.... For the purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section [904].

The 1984 amendments, however, were not successful in overruling *Johnson*. *Johnson* was decided under the District of Columbia's Workmen's Compensation Act of 1928, D.C.Code §§ 36–501 *et seq.* (1973), which was no longer part of the LHWCA at the time of the amendments. *See generally Keener*, 800 F.2d at 1175–78. Thus, the amendments were held not to retroactively affect pending claims such as those in *Johnson*. *Id.* at 1181.

*also Mendiola v. Kyowa Shipping Co. Ltd.,* No. 83–0001 (D.C. Guam July 16, 1984) (uninsured general contractor is not a "third party" subject to suit where the subcontractor has procured workers' compensation coverage). As noted by one commentator, "[t]he object of the 'contractor-under' statutes is to give the general contractor an incentive to require subcontractors to carry insurance." 2A Larson § 72.31(b), at 14–176. If the general contractor does conscientiously insist on this insurance, its reward should not be loss of exemption from third-party suit. Certainly, the Guam legislature, while silent on this subject, did not intend such a result. Accordingly, we follow the "marked trend" and hold that Maeda is entitled to immunity from this negligence action under section 37005 because it did not neglect to fulfill its statutory obligation to secure workers' compensation coverage.

AFFIRMED IN PART AND REVERSED IN PART.