**In re Richard D. HONGISTO, Debtor.**

**Rene Hilton, Appellant,**

v.

**Richard D. Hongisto, Appellee.**

**No. C 01–4254 MMC.**
**Bankruptcy No. 99–33020 DM.**

United States District Court,
N.D. California.

April 15, 2003.

K. Keith McAllister, Law Offices of Keith McAllister, Tiburon, CA, Edward Mevi, Stanton Kay & Watson, San Francisco, CA, for debtor.

Edward G. Myrtle, Office of the U.S. Trustee, San Francisco, CA, for Maureen Tighe.

Aron M. Oliner, Buchalter, Nemer, Fields & Younger, San Francisco, CA, for Charlie E. Sims.

## DECISION AFFIRMING ORDERS
## OF BANKRUPTCY COURT

CHESNEY, District Judge.

Before the Court is appellant/claimant Rene Hilton's ("Hilton") appeal from the bankruptcy court's order of October 29, 2001, disallowing Hilton's claim against appellee/debtor Richard D. Hongisto ("Hongisto"), and from various other orders made in the course of the proceedings. Having reviewed the briefs filed in connection with the appeal, the Court rules as follows.

## BACKGROUND

On July 30, 1997, Hilton filed a complaint in the Superior Court of California, County of San Francisco, against Ambassador Security, Inc. ("Ambassador") and Hongisto, alleged to be the Chief Executive Officer of Ambassador.[1] (Appellant's Record ("AR") Ex. 35.) In his complaint, Hilton alleged that on April 23, 1997, a security officer employed by Ambassador and an undercover police officer accused Hilton of theft and assaulted him outside a Safeway store. (*Id.*) Hilton alleged that the incident was the result of a conspiracy among Hongisto, Ambassador, Safeway, the City and County of San Francisco, and unknown persons to assault Hilton and cause him to be arrested. (*Id.*) Based on these assertions, Hilton alleged claims of assault, battery, intentional infliction of emotional distress, false imprisonment, violation of the California Constitution, and violations of California Civil Code § 51.7 (providing right to be "free from any violence, or intimidation by threat of violence" committed because of certain characteris-

tics)[2] and § 52.1 (providing cause of action for violation of § 51.7). (*Id.*)

On September 16, 1999, Hongisto filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code, (*see* Bankruptcy Court Docket No. 1),[3] thus effecting an automatic stay of Hilton's state court proceeding against him. *See* 11 U.S.C. § 362. On January 10, 2000, Hilton filed in the bankruptcy court a proof of claim form, seeking $25,000 against the bankruptcy estate. (AR Ex. 35.) A copy of the state court complaint was attached to the proof of claim form. (*Id.*) On August 29, 2000, Hongisto filed an objection to the claim, (*see* Bankruptcy Court Docket No. 158), denying the facts alleged in Hilton's claim. (Transcript of Trial Proceedings, ("Trial Tr."), October 15, 2001, at 30.)

On October 15, 2001, the bankruptcy court conducted a trial, during which proceeding Hilton did not testify or call any witnesses, but did offer exhibits. (AR Ex. 9 at 3.) Hilton's chief exhibit was a set of requests for admission, which he argued Hongisto had fully admitted by failing to respond thereto. (*Id.*) In response to Hilton's argument, Hongisto asserted that responses to the requests for admission had been sent to Hilton, and, as supporting evidence, offered proof of service on Hilton at Hilton's address of record. (Trial Tr. at 17–19.) When Hongisto then sought to admit his responses, Hilton argued that because he had not received the responses and because Hongisto had not included the responses on Hongisto's exhibit list, the bankruptcy court should not admit the responses. (*Id.*)

1. Hilton also named as defendants the City and County of San Francisco, Safeway Incorporated, and Doe defendants.

2. Hilton alleged defendants "do not like plaintiff's characteristics, e.g. they do not like

the way plaintiff dresses or that plaintiff smiles, etc." (AR Ex. 35 at ¶ 63.)

3. A copy of the docket is attached to Hilton's Notice of Appeal, filed November 15, 2001.

After considering the arguments, the bankruptcy court admitted the responses into evidence, whereupon Hilton moved for a two-week continuance of the trial. (*Id.* at 19, 22.) When the bankruptcy court inquired as to what Hilton would do in that time, Hilton, as the bankruptcy court noted, did not state that he intended to "prepare proof of facts no longer deemed admitted by Hongisto." (AR Ex. 9 at 4.) Rather, Hilton responded that he would submit a "brief on the law of surprise at trial." (Trial Tr. at 29.) The bankruptcy court, explaining that granting a continuance would eliminate any surprise, denied the motion. (*Id.*) Hilton subsequently rested his case. (*Id.* at 36.) Hongisto did not call any witnesses or testify. (*Id.*·at 37.) The bankruptcy court then took the matter under submission. (*Id.*)

On October 29, 2001, the bankruptcy court issued its memorandum decision, disallowing Hilton's claim in its entirety and finding in favor of Hongisto. (AR Ex. 9.) In its ruling, the bankruptcy court discussed the requests for admission. Two of those requests were uncontested by Hongisto,[4] and four were deemed admitted by virtue of Hongisto's having denied those requests generally.[5] (*Id.* at 5–7.) The bankruptcy court held that Hilton had not adequately proven his claim, notwithstanding the admissions. (*Id.* at 7.) The bankruptcy court reasoned that Hilton had failed to prove "that a conspiracy existed, who along with Hongisto were the conspir-

ators, what acts they took in furtherance [of the] alleged conspiracy, and on what theory Hongisto should be held liable." (*Id.*)

On November 7, 2001 Hilton filed a timely notice of appeal, which he amended on November 19, 2001. (AR Exs. 1–2.)

## STANDARD OF REVIEW

■■■ A district court reviews a bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *In re Holm,* 931 F.2d 620, 622 (9th Cir.1991). With respect to findings of fact, the appellant must demonstrate that any challenged findings were clearly erroneous. *In re Huntington Ltd.,* 654 F.2d 578, 583 (9th Cir.1981). A "mere showing that the bankruptcy court could have reached another conclusion based upon the evidence presented is insufficient." *Id.*

## DISCUSSION

Hilton argues that the bankruptcy court erred by disallowing his claim. He also challenges various orders issued in the course of the proceedings. The Court addresses each of Hilton's contentions in turn.

### A. Burden of Proof

In its memorandum decision, the bankruptcy court determined that "Hilton's case fail[ed] for lack of proof" and that the

---

4. Hongisto admitted that he was the chief executive officer of both Ambassador (Request No. 1), and Cosmopolitan Security, Inc. (Request No. 2). (AR Ex. 9 at 5.) Cosmopolitan, according to Hongisto, is a California corporation in which Hongisto owns all the shares and that purchased some of the assets of Ambassador. (AR Ex. 28 at 2.)

5. The requests deemed admitted established the following as true: a security guard employed by Ambassador, acting within the scope .of his employment, assaulted and bat-

tered Hilton at the time and place alleged (Request No. 16); Hongisto was "contacted by persons who formed the conspiracy" and was told that they wanted an Ambassador guard to assault Hilton (Request No. 29);. Hongisto assigned the security guard to the Safeway store (Request No. 30); and that Hongisto knew Ambassador's records "would show that the security guard intentionally assaulted Hilton" (Request No. 38). (AR Ex. 9 at 5–7.)

"scant admissions found in Hongisto's Response to Requests 29 and 30 lack[ed] particularity sufficient to implicate Hongisto."[6] (AR Ex. 9 at 7.) On appeal, Hilton argues that his proof of claim was prima facie evidence of the validity of the claim and that he was not required to offer any further evidence in support of his claim unless and until Hongisto offered evidence to rebut the presumption of validity and shift the burden of proof back to Hilton.

■ A proof of claim constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f). A proof of claim "is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The Ninth Circuit Bankruptcy Appellate Panel has explained the burdens of proof with respect to a bankruptcy proof of claim as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is prima facie valid. In other words, a claim that alleges *facts sufficient to support a legal liability* to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. . . . The burden of persuasion is always on the claimant.

*In re Consolidated Pioneer Mortgage*, 178 B.R. 222, 226 (9th Cir. BAP 1995) (quoting *In re Allegheny International Inc.*, 954 F.2d 167, 173–74 (3rd Cir.1992)) (emphasis added). As set forth in *Consolidated Pioneer Mortgage*, unless the claimant has alleged "facts sufficient to support a legal

liability," the claim is not prima facie valid. *Id.* (holding, because writings submitted with plaintiffs' claim did not support liability, proof of claim was not prima facie evidence of validity under Rule 3001(f)).

■ Hilton's proof of claim consists of the above-referenced complaint filed in the state court proceeding, in which Hilton alleged he was assaulted as the result of a conspiracy. "Conspiracy is not a cause of action," but a legal doctrine for imposing liability. *Applied Equipment Corporation v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). The elements of a conspiracy are as follows: "formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Id.* At the heart of any conspiracy is an agreement between two or more people made with knowledge of its unlawful purpose. *See Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 784–85, 157 Cal.Rptr. 392, 598 P.2d 45 (1979).

Here, the sole allegation in Hilton's complaint specific to Hongisto's connection to the alleged conspiracy is:

> [A]s part of a larger conspiracy a conspiracy was formed as follows: People unknown to plaintiff that have formed groups contacted Richard Hongisto and told him that during a week in April of 1997 that they wanted an Ambassador Security guard to assist a San Francisco Police Department decoy, the purpose of which was to assult [sic] the plaintiff.

(AR Ex. 35 at 12.) Missing from the above allegation is any assertion that Hongisto agreed to join the unnamed conspirators or that Hongisto intentionally acted in any way in furtherance of the alleged con-

---

**6.** As noted, the matters deemed admitted in Request Nos. 29 and 30 were that Hongisto was "contacted by persons who formed the conspiracy" and that Hongisto assigned the security guard to the Safeway store. (*See* n.

5, *supra.*) It also should be noted that although the two matters follow in numerical order, there is nothing in their content to suggest the chronological relationship between them.

spiracy. As a matter of law, Hilton's complaint, and hence his proof of claim, fails to "allege facts sufficient to support a legal liability," and thus does not constitute prima facie evidence of the validity of the claim.[7] *See Consolidated Pioneer Mortgage*, 178 B.R. at 226. Consequently, the initial burden of proof at trial was properly placed on Hilton, and, accordingly, the bankruptcy court did not err in doing so.

Accordingly, Hilton has failed to demonstrate that he is entitled to relief based on the manner in which the bankruptcy court allocated the respective burdens of proof.

## B. Responses to Requests for Admissions

Several of Hilton's claims on appeal center around a set of requests for admission, dated August 15, 2000, that he submitted to Hongisto, and Hongisto's responses to those requests, dated September 13, 2000. (AR Exs. 27–28.) Over Hilton's objection, the bankruptcy court allowed Hongisto to offer the responses into evidence. (Trial Tr. at 17–18.) Hilton contends that the responses were improperly admitted into evidence because: (1) the responses did not comply with Rule 7036 of the Federal Rules of Bankruptcy Procedure; (2) the scheduling order issued by the bankruptcy court required the parties to disclose exhibits prior to trial and Hongisto had not disclosed the responses; and (3) the responses failed to comply with Bankruptcy Local Rule 1001–2(a)(46). Hilton alterna-

tively argues that if the responses were properly admitted, the bankruptcy court erred by finding that Hongisto sufficiently denied certain of the requests for admission.

### 1. Rule 7036

#### a. Timeliness of Service of Responses

■ As noted, Hilton contended at trial that he did not receive Hongisto's responses to Hilton's requests for admission, and Hongisto offered proof of service of the responses on Hilton at Hilton's address of record. In its memorandum decision, the bankruptcy court indicated that it had admitted the responses "because Hilton's statement that he had not received the Response was not sufficient to overcome the presumption that Hongisto's proof of service was accurate." (AR Ex. 9 at 4.) Hilton argues that admitting the responses was error because the bankruptcy court incorrectly found that the responses were timely served on Hilton.

In so arguing, Hilton relies on Rule 7036 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 36 of the Federal Rules of Civil Procedure. Rule 36(a) provides, in relevant part, that a request for admission is "deemed admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or

---

**7.** Even if Hilton's proof of claim were presumptively valid and thus sufficient to shift the burden of proof to Hongisto in the first instance, Hilton fares no better. Hilton argues Hongisto's objection is insufficient to rebut the presumption. Hilton, as the party claiming error, is required to establish that the contents of Hongisto's objection were insufficient. Hilton, however, did not designate Hongisto's objection as part of the record on appeal. (*See* Appellant's Designation of Record, filed November 19, 2001.) Consequent-

ly, the Court will not consider any argument as to the sufficiency of the contents of Hongisto's objection. *See In re Ashley*, 903 F.2d 599, 603 (9th Cir.1990) (declining to consider appellant's argument that district court erred in finding affidavit insufficient to prove fact at issue because appellant had not designated affidavit as part of record on appeal); *United States v. Mills*, 597 F.2d 693, 698 (9th Cir. 1979) (holding where "no record is provided upon which [a] claim can be evaluated, it must be denied").

objection addressed to the matter." Fed. R.Civ.P. 36(a).

■ A properly addressed proof of service carries with it a presumption of receipt. *See Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). A party claiming nonreceipt must overcome the presumption with clear and convincing evidence; a simple denial of receipt is insufficient. *See In re Bucknum,* 951 · F.2d 204, 207 (9th Cir.1991) (holding "simple affidavit to the contrary" insufficient to rebut presumption of receipt). Because Hilton offered no evidence and only denied receipt, the bankruptcy court properly held that Hilton had failed to rebut the presumption of receipt by clear and convincing evidence. *See id.*

Accordingly, the bankruptcy court did not err in finding that the responses were timely served.

### b. Amendment or Withdrawal of Responses

■ In its memorandum decision, the bankruptcy court alternatively held the responses were admissible in evidence as amendments to or withdrawals of any admissions deemed made by reason of untimely service. (AR Ex. 9 at 4.) Hilton argues the bankruptcy court erred by finding that Hilton would not be prejudiced by allowing any such admissions to be amended or withdrawn.

Under Rule 36(b), a court may permit the withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense *on the merits.*" Fed.R.Civ.P. 36(b) (emphasis added).

From the time Hongisto's objection was filed through the conclusion of the trial, Hongisto denied any knowledge of or involvement in the alleged conspiracy against Hilton. (AR Ex. 34 at 2; AR Ex. 9 at 2.) Because Hongisto, both in his objection and his answers to interrogatories, consistently denied being involved in the alleged conspiracy,[8] Hilton was on notice from the outset that Hongisto denied any knowledge of or involvement in a conspiracy against him. Moreover, the bankruptcy court indicated that it would consider granting a motion to continue the trial if Hilton could explain what evidence Hilton would obtain during that time to contradict the denials in the responses.[9] (AR Ex. 9 at 25–26.) Hilton failed to make such a showing to the bankruptcy court (*id.*), and has similarly failed to do so on appeal.

---

8. For example, one of Hilton's interrogatories requested that Hongisto "state what defenses you intend to raise to support your contention that the claim is not valid against the estate of Richard Hongisto" and "[f]or each defense you intend to raise... state the basis for raising the defense." (AR Ex. 54 at 2.) Hongisto's verified response was: "Mr. Hongisto did not participate in any of the actions or the conspiracy alleged in Mr. Hilton's Proof of Claim and Mr. Hongisto has no personal knowledge of such actions or conspiracy. Mr. Hongisto therefore knows no basis upon which he may be held responsible for the actions and conspiracy alleged by Hilton." (AR Ex. 55 at 2.)

9. On October 15, 2001, Hilton filed a motion to continue the trial on the ground that Hongisto had not timely filed his trial brief, which motion was thereafter denied. (AR Exs. 8, 11.) In his Notice of Appeal, Hilton claimed the denial was error, but thereafter failed to discuss the issue in his papers. Accordingly, any claim of error based on the denial of a continuance on such grounds is deemed waived on appeal. *See Hyon–Su v. Maeda Pacific Corp.,* 905 F.2d 302, 304, n. 1 (9th Cir.1990) (holding appellant's "failure to raise or argue an issue in appellant's opening brief is deemed a waiver of that issue").

Consequently, Hilton has not established that he was prejudiced by the bankruptcy court's decision to allow Hongisto to continue to assert his denial and to defend himself on the merits, rather than deeming Hilton's requests to have been admitted.

Accordingly, the bankruptcy court did not err by finding that the responses, even if not timely served on Hilton, were properly admissible at trial pursuant to Rule 36(b).

## 2. Scheduling Order

█ On July 27, 2001, the bankruptcy court issued a scheduling order requiring that the parties, no later than 10 days prior to trial, file a list of exhibits to be used at trial and exchange copies of all exhibits intended to be introduced into evidence. (AR Ex. 16 at Ex. D.) Hongisto did not include on his exhibit list his responses to Hilton's requests for admission. (AR Ex. 31.) At trial, among the grounds raised by Hilton in opposition to Hongisto's request to admit his responses, Hilton argued that Hongisto had not disclosed the responses on Hongisto's exhibit list, in violation of the scheduling order. (Trial Tr. at 20.) In response to Hilton's argument, Hongisto stated that he had interpreted Hilton's list of exhibits to include Hongisto's responses, and that he did not anticipate Hilton would file only the set of requests for admissions without the responses. (Trial Tr. at 15–16.) The bankruptcy court accepted Hongisto's explanation, and allowed the responses into evidence. (*See* Trial Tr. at 20.)

█ Rule 7016 of the Federal Rules of Bankruptcy Procedure incorporates Rule 16 of the Federal Rules of Civil Procedure, which governs scheduling orders. Rule 16(b) provides for the amendment of a scheduling order "upon a showing of good cause." *See* Fed.R.Civ.P. 16(b). A trial court has broad discretion with respect to

decisions regarding pretrial orders, and its decisions "will not be disturbed unless they evidence a clear abuse of discretion." *See Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir.1985) (holding trial court's determination regarding preclusive effect of pretrial order was not an abuse of discretion).

Here, Hilton argues that the bankruptcy court abused its discretion because Hilton was prejudiced by the bankruptcy court's allowing Hongisto to use the responses as evidence. As discussed above, however, Hilton failed to show prejudice because he was on notice prior to trial of Hongisto's denial of involvement in a conspiracy against him.

Accordingly, Hilton has failed to show the bankruptcy court abused its discretion in allowing Hongisto to offer the responses into evidence.

## 3. Bankruptcy Local Rule 1001–2(a)(46)

█ Hilton also argues that Hongisto's responses should not have been admitted because Hongisto did not comply with Bankruptcy Local Rule 1001–2(a)(46). Hilton contends that Hongisto's failure to comply with this rule was prejudicial because Hongisto was "able to avoid complying" with the rule. (*See* Appellant's Opening Br. at 9.)

Bankruptcy Local Rule 1001–2(a)(46) incorporates Civil Local Rule 36–1, which provides that "responses for requests for admission must set forth each request in full before each response or objection." *See* Civ. L.R. 36–1.

At trial, Hilton failed to object on the ground that Hongisto's responses failed to comply with Bankruptcy Local Rule 1001–2(a)(46). "Federal Rule of Evidence 103(a)(1) requires [ ] that a timely objection or motion to strike appear of record,

stating the specific ground for the objection." *Torres v. Johnson Lines*, 932 F.2d 748, 752 (9th Cir.1991). Failure to make such an objection before the trial court constitutes a waiver of a party's right to have the evidence excluded. *Id.; see also In re Bicoastal Corp.*, 202 B.R. 998, 1007 (M.D.Fla.1996) (applying Rule 103(a) in bankruptcy proceeding). Consequently, any argument that Hongisto's responses did not comply with Bankruptcy Local Rule 1001–2(a)(46) is waived. Moreover, even if Hilton had objected at trial, he was required to show that a "substantial right" was affected. *See* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .") Hilton's argument that his rights were affected because Hongisto was "able to avoid complying" with the rule is both conclusory in form and insufficient in substance. (Appellant's Opening Br. at 9.)

Accordingly, Hilton is not entitled to relief based on his claim that Hongisto's responses did not comply with Bankruptcy Local Rule 1001–2(a)(46).

### 4. Form of Responses

Hilton also argues that, assuming, *arguendo*, the responses were properly admitted, the bankruptcy court erred by finding that certain responses were proper denials. At trial, in response to the bankruptcy court's inquiry, Hilton stated that nine of the requests for admission were material to his case.[10] (Trial Tr. at 33–34.) As discussed, two of these requests were uncontested by Hongisto and four were deemed admitted by the bankruptcy court.[11] (AR Ex. 9 at 5–7.) Of the remaining three, Hilton argues that two of such requests, Request Nos. 27 and 18; likewise should have been deemed admitted.[12]

As noted, Bankruptcy Rule 7036 incorporates Rule 36 of the Federal Rules of Civil Procedure. Rule 36(a) governs responses to requests for admissions:

> If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insuffi-

---

**10.** Hilton argues that other requests for admission should have been deemed admitted by the bankruptcy court. (See Appellant's Opening Br. at 10–11.) None of those requests was relied upon by Hilton at trial, and Hilton fails to show, or even argue, on appeal that those other requests were material to his case. Accordingly, the Court will not address whether the bankruptcy court erred by failing to deem such requests admitted.

**11.** Hongisto has filed a cross-appeal from the order disallowing the claim, arguing that the bankruptcy court erred by finding that Hongisto was deemed to have admitted certain of the requests for admission. By separate order filed in the cross-appeal, the Court has dismissed the cross-appeal as moot.

**12.** At trial, Hilton contended that Request No. 37 was material. The bankruptcy court deemed Request No. 37 denied. (AR Ex. 9 at 6.) In his briefs on appeal, Hilton does not refer to Request No. 37, and thus has waived any argument that Request No. 37 was improperly deemed denied. *See Hyon–Su*, 905 F.2d at 304, n. 1.

cient to enable the party to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c) deny the matter or set forth reasons why the party cannot admit or deny it. *See* Fed.R.Civ.P. 36(a).

In Request No. 27, Hilton requested that Hongisto admit that "[o]n the basis of actions of the security guard the assult [sic] and battery was motivated by bias becuse [sic] the defendants including Richard Hongisto joined in a conspiracy which has as it's [sic] objective th [sic] have Rene Hilton arrested." (AR Ex. 27 at 3.) Hongisto's response to Request No. 27 was:

> Mr. Hongisto admits and denies as follows: Richard Hongisto denies being part of any conspiracy to have Rene Hilton arrested. As to the balance of the [request], having made reasonable inquiry and having determined that the information known or readily available to Mr. Hongisto was insufficient for Mr. Hongisto to admit or deny, Mr. Hongisto neither admits nor denies the truth of the facts designed [sic] in Request No. 27.

(AR Ex. 28 at 2–3.)

■ Hilton argues that the bankruptcy court erred in finding Hongisto's response to Request No. 27 was a sufficient denial because, according to Hilton, "the debtor did not as required by Rule 7036 make a qualified denial, by stating what was denied, and what part of the request is true . . . ." (Appellant's Opening Br. at 10.) Hilton misreads Rule 7036. First, Rule 36(a) provides that "when good faith requires that a party qualify an answer or deny only part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify

or deny the remainder." *See* Fed.R.Civ.P. 36(a) (emphasis added). Here, Hongisto clearly denied "part of the matter" and qualified the remainder. *See id.* Second, Rule 36(a) provides that lack of information is not an acceptable reason for a failure to admit or deny *"unless* the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." *See id.* (emphasis added). Hongisto's response uses language nearly identical to that of Rule 36(a) and thus satisfies the requirements of the exception.

In Request No. 18, Hilton requested that Hongisto admit that the security guard who allegedly assaulted Hilton was employed by Cosmopolitan Security, Inc. In its memorandum decision, the bankruptcy court found that Request No. 18 was adequately denied but nonetheless assumed that the security guard who assaulted Hilton was employed by Cosmopolitan for purposes of analyzing the merits of Hilton's claim. (AR Ex. 9 at 5.) Because the bankruptcy court essentially deemed the request admitted, no error can be assigned based on the form of denial.

Accordingly, Hilton has not shown the bankruptcy court erred by finding Hongisto properly denied Request Nos. 27 and 18.

## C. Sufficiency of Findings of Fact and Conclusions of Law

Hilton argues that the bankruptcy court erred by denying Hilton's post-trial motion that the bankruptcy court supplement its findings of fact and conclusions of law. In his motion, Hilton contended that the memorandum decision issued October 29, 2001 was "unclear and ambiguous" and that the "facts are not specially stated and the conclusions of law are not separately

stated." (AR 4 at 1.) The bankruptcy court denied the motion, noting that the memorandum decision included "findings of fact and conclusions of law in narrative form." (AR 6 at 1.) On appeal, Hilton challenges that ruling, as well as three of the bankruptcy court's "findings."

Rule 7052 of the Federal Rules of Bankruptcy Procedure incorporates Rule 52 of the Federal Rules of Civil Procedure. Pursuant to Rule 52, a trial court shall "find facts specially and state separately its conclusions of law." See Fed.R.Civ.P. 52(a). The Rule further provides that it will be "sufficient if the findings of fact and conclusions of law ... appear in an opinion or memorandum of decision filed by the court." Id. Here, the bankruptcy court opted to set forth its findings and conclusions in a memorandum decision rather than delineating them as such. As trial courts have discretion under Rule 52 to use either method, the bankruptcy court did not err when it included its findings and conclusions in its memorandum decision.

With respect to the three challenged "findings," a district court, as noted above, reviews a bankruptcy court's findings of fact under the clearly erroneous standard, and the appellant has the burden of showing that the findings were clearly erroneous. See Huntington, 654 F.2d at 583.

The first "finding" challenged by Hilton is the following statement by the bankruptcy court:

The thrust of Hilton's case against Hongisto turns upon the fact that Ambassador was a corporation wholly-owned and controlled by Hongisto; that the assets of Ambassador were acquired by Cosmopolitan Security, Inc. ("Cosmopolitan") subsequent to the events complained of; that Hongisto is the owner of Cosmopolitan; that Cosmopolitan is an asset of this Chapter 11 case; and, therefore, Hongisto is liable to Hilton. (AR 9 at 3.) Hilton argues that the above quoted "finding" is erroneous because neither the memorandum decision nor the trial transcript reflect any evidence on which it could have been based. Hilton's characterization of the above-quoted statement as a "finding" is incorrect. The bankruptcy court followed the statement with an explanation of how Hilton failed to prove the aforementioned theory. (AR Ex. 9 at 3–7.) When the statement is read in context, it is clear that the bankruptcy court was summarizing Hilton's allegations, not making a "finding of fact."

The second "finding" challenged by Hilton is the bankruptcy court's statement that "Hilton has been given numerous opportunities to discover from Safeway, the City of San Francisco, or anyone else any and all facts necessary to establish his theory of Hongisto's liability." (AR Ex. 9 at 7.) The statement in question, however, is not a "finding" as to any "fact" relevant to the merits of Hilton's claim. Moreover, to the extent Hilton argues there is no evidence in the record to support this "finding," Hilton is again incorrect. At a discovery hearing on July 27, 2001, the bankruptcy court pointed out that Safeway and the San Francisco Police Department likely would have records of the alleged incident and that the stay of the state court proceedings subsequent to the filing of Hongisto's petition for bankruptcy did not prevent such discovery. (Transcript of Hearing on Motion, July 27, 2001, at 50–55.) By the above-referenced statement in the memorandum decision, the bankruptcy court noted that Hilton had not attempted, even after the bankruptcy court's observations at the discovery hearing, to serve discovery requests on anyone other than Hongisto. As Hilton did not present evidence of his efforts to obtain discovery from any source other than Hongisto, the

statement, to the extent it can be characterized as a "finding of fact" is not clearly erroneous.

The third "finding" challenged by Hilton is the bankruptcy court's statement that Hilton's claim failed because "[h]e has not established adequately that a conspiracy existed, who along with Hongisto were the conspirators, what acts they took in furtherance [of the] alleged conspiracy, and on what theory Hongisto should be held liable." (AR 9 at 7.) Hilton contends that this finding is in error because the "proof of claim is prima facie evidence and the proof of claim alleged the formation of the conspiracy [and] the acts in furtherance of the conspiracy," and the requests for admissions "provide additional facts that Richard Hongisto is liable." (Appellant's Opening Br. at 13.)

As discussed above, Hilton's proof of claim failed to "allege facts sufficient to support a legal liability." *See Consolidated Pioneer Mortgage*, 178 B.R. at 226. Consequently, at trial Hilton was required to offer evidence sufficient to prove that Hongisto, as the Chief Executive Officer of Ambassador and Cosmopolitan, could be held personally liable for the admitted assault on Hilton by an employee of Ambassador, or, alternatively, that Hongisto himself was a member of a conspiracy to harm Hilton. Hilton presented no such evidence at trial and, on appeal, has failed to demonstrate how the findings of the bankruptcy court constitute clear error.

Accordingly, Hilton has failed to show that the bankruptcy court erred by denying the motion to supplement its findings of fact and conclusions of law or that any of the findings and conclusions are clearly erroneous.

## D. Discovery Matters

### 1. Interrogatories

On June 28, 2001, Hilton filed a motion to compel further answers to interrogatories. On June 29, 2001, Hilton filed a motion for sanctions under Rule 7026 of the Federal Rules of Bankruptcy Procedure (incorporating Fed.R.Civ.P. 26) and a motion for expenses under Rule 7037 of the Federal Rules of Bankruptcy Procedure (incorporating Fed.R.Civ.P. 37). (AR Ex. 38–46.) On August 2, 2001 the bankruptcy court issued an order granting in part the motion to compel [13] and denying the other two motions. (AR Ex. 48.)

Hilton appeals from these discovery orders, arguing that "the answers to the interrogatories were not truthful." (Appellant's Opening Br. at 14.) Essentially, Hilton argues that because certain requests for admission deemed admitted by the bankruptcy court contradicted answers Hongisto had given earlier to certain interrogatories, the interrogatories must have been answered untruthfully.[14]

---

**13.** The bankruptcy court required Hongisto to supplement some of his interrogatory answers. (*See* AR Ex. 48.) By separate order, the bankruptcy court granted a motion to compel further answers to interrogatories propounded by Hongisto. (*See* AR Ex. 53.) Although Hilton, in his Notice of Appeal, claims to appeal the latter order, Hilton has failed to discuss that order in his briefing. Accordingly, Hilton has waived any claim of error. *See Hyon–Su*, 905 F.2d at 304, n. 1.

**14.** For example, Hilton's Request for Admission No. 30, which the bankruptcy court deemed Hongisto to have admitted, requested that Hongisto admit he "assigned the security guard that assulted [sic] and battered Rene Hilton to the Safeway retail location." (AR Ex. 27 at 3.) Correspondingly, Interrogatory No. 3 asked Hongisto to "[i]dentify the person(s) that assigned the security guards to patrol the Safeway retail location." (AR Ex. 36 at 3.) Hongisto's response to the interrogatory was "[t]hat information is not known to me and I do not have the records of Ambassador Security, Inc." (AR Ex. 37 at 2.)

Hilton appears to contend that, as a result of the bankruptcy court's ruling that Hongisto was deemed to have admitted certain requests for admission, the bankruptcy court should have reconsidered its discovery rulings and imposed sanctions on Hongisto. Because Hilton made no such motion before the bankruptcy court, and because Hilton cites no authority for the proposition that it is the bankruptcy court's responsibility to raise such issues sua sponte, the issue is deemed waived on appeal. *See In re Southland Supply, Inc.,* 657 F.2d 1076, 1079 (9th Cir.1981) (holding general rule that "[a]n appellate court will not review an issue not raised or objected to below unless necessary to prevent manifest injustice" applicable to appeals from bankruptcy proceedings).

## 2. Disqualification

On October 11, 2001, shortly before the trial was scheduled to begin, Hilton filed a motion to disqualify the bankruptcy judge on the ground of bias. (AR Ex. 14–16.) Hilton's motion was based on the theory that the bankruptcy court was conspiring to prevent Hilton from timely filing his papers in order that the bankruptcy court could disallow Hilton's claim without having to conduct a trial. (AR Ex. 15 at 5.) This theory was based on Hilton's allegation that he did not receive a scheduling order issued after a July 27, 2001 hearing, and that the reason he did not receive the order was that the clerk of the bankruptcy court intentionally mailed the order to an incorrect address. When Hilton failed to appear at the next scheduled hearing, Hongisto pointed out the incorrect address to the bankruptcy court. (AR Ex. 18 at 2.) The bankruptcy court thereafter issued an order rescheduling the hearing, in which order the bankruptcy court attributed any problem with the mailing to Hilton's failure to include his correct address on many of the papers he had filed. (*Id.*)

On October 15, 2001, at the beginning of the trial, the bankruptcy court denied the motion to disqualify. In so ruling, the bankruptcy court stated that, although Hilton initially had provided a proper address to the clerk of the bankruptcy court, "what goes into the original court files isn't necessarily what's available to my staff and chambers" and that if Hilton "had used [his correct address] on all [his] papers, it never would have happened." (Trial Tr. at 4–5.) The bankruptcy court further indicated that a clerical error is not "evidence of intention to do you [Hilton] harm and indicate bias and a basis for disqualification." (*Id.*)

 Under Bankruptcy Rule 5004, disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455, which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or if he "has a personal bias or prejudice concerning a party." *See* 28 U.S.C. §§ 455(a), (b)(1). Under § 455, a judge shall disqualify himself / herself if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *See In re Goodwin,* 194 B.R. 214, 222–224 (9th Cir. BAP 1996) (holding judge's ex parte contacts regarding court security "would not cause a reasonable person to question the judge's impartiality"). For purposes of reviewing an order denying a motion filed pursuant to § 455, the applicable standard is abuse of discretion. *Id.* at 220.

 Hilton argues that the order denying the motion was error because the facts set forth in his affidavit sufficiently demonstrate grounds for disqualification, that an inference of intentional withholding of information can be drawn from the fact that the scheduling order was incorrectly addressed, and that, contrary to the bank-

ruptcy court's comment, it was not Hilton's fault that he did not receive the scheduling order. (Appellant's Opening Br. at 16–17.)

A review of the record on appeal establishes that at least seven documents filed by Hilton included an incomplete address, supporting the bankruptcy court's finding that the misaddressed order was the result of an inadvertent clerical error that could have been prevented had Hilton consistently used his complete address on all filings.[15] Further, the bankruptcy court, upon learning of the error, issued a new order rescheduling the hearing. In short, Hilton has not presented any evidence that would cause a reasonable person to question the impartiality of the bankruptcy judge.

Accordingly, the bankruptcy court did not err by denying the motion to disqualify.

### CONCLUSION

For the reasons stated, the decision of the bankruptcy court disallowing Hilton's claim is hereby AFFIRMED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

---

15. For example, on Hilton's Request for Order Shortening Time, Hilton incorrectly lists his address as PMB 224, San Francisco, CA 94109. (*See* AR Ex. 22; *see also* AR Exs. 23, 24, 25, 27, 36, 38–42.) The clerk of the bankruptcy court sent the scheduling order to Hilton at P.O. Box 224, San Francisco, CA 94109. (AR Ex. 16 at Ex. D.) The correct address is PMB 224, 633 Post Street, San Francisco, CA 94109 (AR Ex. 17.) PMB stands for "Private Mail Box" and, although similar in appearance to the more commonly encountered P.O.B., is not sufficient for delivery absent a street address.